# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE       HUNTINGTON       NATIONAL
BANK,
A national banking association,

                Plaintiff,                    Civil Action No. 2:22-cv-11290

v.                                         Hon. Gershwin A. Drain

BUCCAROO LLC, a Michigan limited
liability company, BUCAROO TOO LLC,
a Michigan limited liability company,
DINO DROP, INC., a Michigan
corporation, 45 DEGREE
HOSPITALITY, INC., a Michigan
corporation, WILLIAM ROBERT DUKE
TAYLOR, and DEAN BACH, jointly and
severally,

                Defendants.

_____/

| | |
|---|---|
| David A. Lerner (P44829) | Sara K. MacWilliams (P67805) |
| **PLUNKETT COONEY** | Paige Serra (P84568) |
| *Attorney for Plaintiff* | **MACWILLIAMS LAW PC** |
| 38505 Woodward Avenue | *Attorneys for William Robert Duke Taylor* |
| Suite 100 | 838 West Long Lake Road |
| Bloomfield Hills, MI 48304 | Suite 211 |
| (248) 901-4010 | Bloomfield Hills, MI 48302 |
| dlerner@plunkettcooney.com | (248) 432-1586 |
| | sm@macwilliamslaw.com |
| | paige@macwilliamslaw.com |
| | |
| Scott Norton (P35717) | Frances B. Wilson (P |
| **Scott Norton Law** | **Dawda, Mann, Mulcahy & Sadler, PLC** |

*Attorney for Dean Bach*
898 N. Adams Road
Suite 2
Birmingham, MI 48304
scott@scottnortonlaw.com

*Attorney for M. Shapiro Management Company LLC, Court Appointed Receiver*
39533 Woodward Avenue
Suite 200
Bloomfield Hills, MI 48304
fwilson@dmms.com

_____/

## MOTION REGARDING PAYMENT OF FEES INCURRED FOR BENEFIT OF RECEIVERSHIP ESTATE

# Table of Contents

STATEMENT OF ISSUES PRESENTED ............................................................. ivv

CONTROLLING AUTHORITY ................................................................................ v

TABLE OF AUTHORITY ..................................................................................... vii

I.    INTRODUCTION ............................................................................................ 1

II.   FACTS .......................................................... **Error! Bookmark not defined.**

III.  ANALYSIS ................................................... **Error! Bookmark not defined.**

IV.   CONCLUSION ............................................................................................... 7

## STATEMENT OF ISSUES PRESENTED

**ISSUE:**

Whether the Court should require the Receiver to permit payment of outstanding fees incurred on behalf of the companies in receivership with the Plaintiff's permission and approval?

**ANSWER:**

Defendant Duke Taylor and counsel: **YES**

Receiver's position: **NO**

# CONTROLLING AUTHORITY

*Miller v. Detroit Auto. Inter-Insurance Exchange*, 139 MichApp 565, 568-569 (1984)…………………………………………………………………………………….4

*Mahesh v. Mills*, 237 Mich. App. 359, 362 (1999)…………………………………5

*Warner v. Tarver*, 158 Mich. App. 593, 599-600 (1986)…………………………..6

# TABLE OF AUTHORITY

## CASES

*Bruce v. United States,* 127 F.Supp. 858 (E.D.Mich.1955)…………………………..4

*Fusion Oil Co v Crescent Petroleum, Inc*, No. 04-73395, 2008 WL 11399627, at *2 (ED Mich, February 6, 2008)…………………………………………………………...5

*Grand Rapids & I.R. Co. v. Cheboygan Circuit Judge,* 161 Mich. 190; 126 N.W. 56 (1910)……………………………………………………………………………………….5

*Kysor Industrial Corp. v. D.M. Liquidating Co.,* 11 Mich.App. 438, 161 N.W.2d 452 (1968)……………………………………………………………………………………..5

*Mahesh v. Mills*, 237 Mich. App. 359, 362 (1999)………………………………………5

*Miller v. Detroit Auto. Inter-Insurance Exchange*, 139 MichApp 565, 568-569 (1984)……………………………………………………………………………………….4

*Miles v. Krainik,* 16 Mich.App. 7, 167 N.W.2d 479 (1969)………………………..5

*Nichols v. Waters,* 201 Mich. 27, 34, 167 N.W. 1 (1918)………………………….5

*Shank v. Lippman,* 249 Mich. 22, 227 N.W. 710 (1929)…………………………...5

*Warner v. Tarver*, 158 Mich. App. 593, 599-600 (1986)…………………………..6

*Weeks v. Wayne Circuit Judges,* 73 Mich. 256, 41 N.W. 269 (1889)……………4-5

*Wipfler v. Warren,* 163 Mich. 189, 128 N.W. 178 (1910)………………………….5

## I.     INTRODUCTION

Defendant Duke Taylor, through the undersigned counsel, stipulated to this receivership in hopes that a receiver could cut through the mess made by his former business partner, Dean Bach, who has repeatedly refused to cooperate in efforts to wind down the businesses and get the bank paid. In fact, in January of 2022, Mr. Taylor, through his commercial broker Jodi Tippins, had a deal on the table to close a sale of the receivership commercial real property located on Vester Street, but Mr. Bach refused to sign a simple consent resolution, replaced his business attorneys at Butzel Long with a new attorney who embarked on a litigation crusade, threatened title companies in hopes someone would pay him a ransom, and otherwise led to this dispute.

Despite the delay, the cash buyer who wanted to purchase the Vester Street property in January 2022 is still willing and able to purchase the property with no due diligence whatsoever, but the receiver has yet to follow up on this and is apparently pursuing new potential buyers who would require legal fees, due diligence delays and extensive professional fees.

This is exactly what Taylor was afraid of when he tried to avoid a receivership: a simple receivership with an active buyer turning into an expensive mess of professionals billing excessive time with no solutions in sight. Sure enough, unfortunately, nearly as soon as Taylor stipulated to the receivership, a multitude of

professionals appeared in this case and now are opposing paying bills that the bank had previously acknowledged benefited this estate.

Taylor's counsel, pursuant to an agreement with Bach that permitted Taylor to manage the corporate wind-down pre-receivership, asked his attorneys to attend to important legal work that in effect made them unofficial receivers. This included getting the electricity back on when Bach failed to pay the bills in the midst of winter, getting the liquor licenses and insurance back up to date, and defending collection claims. Taylor also retained separate company counsel who likewise defended the company, including managing to settle a $300,000 collection case for less than $50,000. But for that legal work, this receivership estate would have far less value. Binding case law permits attorneys who contributed value to a receivership estate to be paid, through attorney liens and motions like this. Taylor and his counsel respectfully request that the Court enter an order permitting the payment of outstanding legal fees from the funds held in trust by MacWilliams Law PC.

## II.   FACTS

The jointly-owned businesses retained corporate counsel to defend it in actions filed by creditors and protect the companies

After the co-owners of the businesses in receivership reached a settlement [Ex. 1], Taylor, pursuant to the settlement agreement, directed his attorneys to do work for the jointly-owned businesses in order to preserve them for the benefit of

creditors. To date, MacWilliams Law PC's outstanding legal balance for this work preserving the company assets is $21,073.00. This work was performed by Paige Serra, an associate attorney, at a rate of only $200/hour, or about half of what the receiver's attorney and the bank's own attorney charges per hour. Thus not only did Ms. Serra's work protect the bank's interests, it also was done at extremely reasonable rates that in fairness should be paid.[1]

In January of 2022, forced to recognize that this work created value for the estate, Huntington Bank agreed to have the MacWilliams Law PC bills for Dino Drop, Inc. and Buccaroo, LLC paid at the closing of Vester. That sale ultimately did not close however due to Dean Bach's refusal to sign a consent resolution and embarkment on an ultimately failed campaign to have the settlement agreement thrown out. [**Ex. 1**, Op. of Oakland County Circuit Court Judge Michael Warren]. Thereafter, with Huntington Bank's full knowledge that the firm was continuing to perform this work, Paige Serra of MacWilliams Law PC continued to perform work for the receivership companies (Buccaroo Too LLC, Dino Drop, Inc., and 45 Degree Hospitality, Inc.) to preserve their real estate and liquor license assets. Likewise, with full knowledge and no objection from Huntington Bank, the Howard Law Firm continued to represent the companies through the creation of a receivership estate.

---

[1] The receiver may suggest that some or all of this work was for Mr. Taylor personally. That is incorrect. Mr. Taylor pays his own legal fees directly. This work was only for the companies.

To ensure that there were no questions about the propriety of paying for legal work on behalf of what is now a receivership estate, rather than pay these invoices pre-receivership, both MacWilliams Law PC and the Howard Law Firm PLC have not applied funds held in trust accounts to their outstanding bills. Thus, MacWilliams Law PC currently has $15,844.22 in trust, and the Howard Law Firm PLC has $6,000 held in trust.

The receiver's counsel, who is quickly incurring fees that will weigh this receivership down, has asked that all of this money simply be handed over to the receiver. But these amounts would be very quickly swallowed up through legal and receivership fees in the event the undersigned attorneys did so. Moreover, this demand ignores their rights as attorneys that have contributed value to the receivership estate. Counsel thus respectfully requests that the Court permit them to apply the balances in trust to their outstanding legal fees incurred on behalf of the receivership parties. Notably, application of the funds in trust to these outstanding legal fees would result in partial payment only.

## III.   LEGAL ANALYSIS

Michigan recognizes a common law attorney's lien on a judgment or fund resulting from the attorney's services. *Miller v. Detroit Auto. Inter-Insurance Exchange*, 139 MichApp 565, 568-569 (1984); See also *Bruce v. United States,* 127 F.Supp. 858 (E.D.Mich.1955); *Weeks v. Wayne Circuit Judges,* 73 Mich. 256, 41

4

N.W. 269 (1889); *Wipfler v. Warren,* 163 Mich. 189, 128 N.W. 178 (1910); *Shank v. Lippman,* 249 Mich. 22, 227 N.W. 710 (1929); *Kysor Industrial Corp. v. D.M. Liquidating Co.,* 11 Mich.App. 438, 161 N.W.2d 452 (1968); *Miles v. Krainik,* 16 Mich.App. 7, 167 N.W.2d 479 (1969). "Where another party claims an interest in the same judgment or recovery as the attorney, the nature of the competing interest matters in determining whether the attorney charging lien is superior to the other party's interest. An attorney charging lien is superior to an opposing party's right of setoff against the same judgment." *Fusion Oil Co v Crescent Petroleum, Inc*, No. 04-73395, 2008 WL 11399627, at *2 (ED Mich, February 6, 2008)[**Ex. 2**] citing *Mahesh v. Mills*, 237 Mich. App. 359, 362 (1999). An attorney's lien is not enforceable against a third party unless the third party has actual notice of the lien or unless circumstances known to the third party are such that the third party ought to have inquired as to the claim of the attorney. *Grand Rapids & I.R. Co. v. Cheboygan Circuit Judge,* 161 Mich. 190; 126 N.W. 56 (1910); *Nichols v. Waters,* 201 Mich. 27, 34, 167 N.W. 1 (1918).

Here, the Receiver's counsel, Dawda Mann, was informed on July 26, 2022 [**Ex. 3**, Email with Dawda Mann Regarding MacWilliams Law Fees], prior to fully taking over as Receiver of the Estate, that MacWilliams Law and the Howard Law Firm had unpaid fees requiring payment prior to settling other debts of the Receivership Companies. Michigan law has stated that if a third-party with valid

prior-in-time security interest knew or should have known that the attorney's efforts would inure to its benefit and that the attorney would look to the fruit of those efforts for payment of attorney fees, equity may demand that the attorney's lien be given priority. *Warner v. Tarver*, 158 Mich. App. 593, 599-600 (1986). Even if the Receiver has other valid "prior-in-time security interests" that need repayment, the Receiver is required to use the funds in the Receiver Estate to pay the outstanding attorney liens.  In *Warner,* the court denied the attorney's claim to fees because the ultimate funds were an escrow account and because the receiver did not use the attorney's effort work-product for its own benefit. The exact opposite situation is present here. Quite simply, the funds in Receivership Estate are only there due to the diligent work by Taylor's counsel and the Receivership Companies' counsel did in order to preserve the Estate.

MacWilliams Law negotiated extremely favorable settlements with several of the Receivership Companies' creditors, saving thousands of dollars and effectively keeping the Receivership Companies viable. Ms. Serra's work for the Companies in paying bills, maintaining open accounts, and keeping the properties running also saved the Receivership Companies thousands of dollars, thus preserving the assets of the Estate. Without the efforts of MacWilliams Law, there would be no estate for the Receiver to manage. The Receiver has thus fully retained the benefit of the

undersigned's actions and it would be extremely inequitable for them not to be fully compensated.

## IV.   CONCLUSION

For the reasons set forth herein, Taylor and the undersigned attorneys respectfully request that the Court permit the application of funds held in the MacWilliams Law PC and Howard Law Firm PLC trust accounts to the receivership companies' outstanding invoices.

Respectfully submitted,

/s/ Sara K. MacWilliams
MacWilliams Law PC
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
(248) 432-1586
Dated: August 18, 2022                sm@macwilliamslaw.com

## **<u>PROOF OF SERVICE</u>**

I certify that I filed the foregoing on today's date in the Court's ECF system

and the same will be served on all counsel of record.

Respectfully submitted,

/s/ <u>Paige Serra</u>
MacWilliams Law PC
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
(248) 432-1586
Dated: August 18, 2022                        sm@macwilliamslaw.com

**EXHIBIT 1**

**OP. OF OAKLAND COUNTY CIRCUIT COURT JUDGE MICHAEL**

**WARREN**

FILED   Received for Filing   Oakland County Clerk   5/20/2022 12:37 PM

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND**
**BUSINESS COURT**

**W. R. DUKE TAYLOR,**

   **Plaintiff,**          **Case No. 21-186604-CB**
                   **Hon. Michael Warren**

**v**

**DEAN M. BACH, et al.,**

   **Defendants.**

---

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**DENYING DEFENDANT DEAN BACH'S MOTION TO SET ASIDE AGREEMENT**
**AND REQUEST TO LIFT STAY**

**At a session of said Court, held in the**
**County of Oakland, State of Michigan**
**May 20, 2022**

**PRESENT:  HON. MICHAEL WARREN**

---

**OPINION**

   This case is before the Court on Defendant Dean Bach's Motion to Set Aside Settlement Agreement and Request to Lift Stay. The parties entered into a Settlement Agreement dated July 16, 2021. Instead of ending the case, it just ignited a new set of controversies. To escape the Settlement Agreement, Bach filed his Motion to Set Aside Settlement Agreement and Request to Lift Stay arguing that he was fraudulently induced to enter into the Settlement Agreement, and it should be set aside. Pursuant to an Order dated January 25, 2022, the Court found that "Whether Defendant Bach's claims of

fraudulent inducement can be proven is a critical issue before the Court. There appear to be genuine issues of material fact regarding this issue, which can only be resolved in an evidentiary hearing."[1] The Court conducted an exhaustive evidentiary hearing in which Bach presented his case in chief on the issue, after which Taylor argued that the Bach had failed to meet his burden and the Court should dismiss Bach's Motion. Accordingly, the Court issues these Findings and Facts and Conclusions of Law.[2]

At stake is whether Bach can escape the Settlement Agreement based on fraud when there was no misrepresentation upon which Bach relied and even if there had been, there was no reasonable reliance on the misrepresentation? Because the answer is "no," Bach's Motion is denied.

## FINDINGS OF FACT

The Court makes the following Findings of Fact based on the Court's assessment of the credibility, demeanor, veracity, vocal tone and expression, tonality, and honesty of the witnesses and the exhibits before it by clear and convincing evidence:

- ✦ During a business divorce involving several jointly owned entities, Bach and Taylor negotiated over the disposition of certain company assets. During the course of the negotiations over the Settlement Agreement, no one told Bach that a

---

[1] The Settlement Agreement provides that the Court retains jurisdiction to enforce the Settlement Agreement.

[2] Although Taylor referred to its oral motion to dismiss as a directed verdict, the Court issues this Findings of Fact and Conclusions of Law pursuant to MCR 2.504(B) (involuntary dismissal).

former company asset, property commonly referred to as the "Sky Bar," was still owned by any of the jointly owned entities. In fact, the Sky Bar had been previously sold.

✦ The Settlement Agreement provided that proceeds of the sale of various assets would go to Bach and Taylor and did not provide Bach any proceeds from the sale of the Sky Bar.

✦ Section 11 of the Settlement Agreement specifically provides for a release for all claims. Section 11(d) expressly provides:

> The parties further agree that this Agreement represents a full and complete compromise and settlement of any and all potential matters involved disputed issues of law and fact by either of the parties against the other relating to the matter set forth in the Lawsuit and relating to any other matter not identified in the Lawsuit. The parties fully assume the risk that the facts and/or law may be other than they believe. Saved and excluded from this Release are any claims arising out of/or created by this Agreement (including exhibits to this Agreement or necessary to enforce the terms of the Agreement).

✦ Bach suffers settlement remorse.  He did not care about the Sky Bar at the time he entered into the Settlement Agreement. He never asked about the status of the Sky Bar. His complaints about fraud surrounding the Sky Bar are baseless - they are nothing more than an after the fact excuse to unwind the Settlement Agreement.

## CONCLUSIONS OF LAW

### I
### The Arguments

Bach argues that the Sky Bar was sold without his knowledge prior to entering into the Settlement Agreement, hiding or misrepresenting that the Sky Bar was still a joint company asset was fraudulent, he would not have entered into the Settlement Agreement had he known of the sale, and that he is entitled to set aside the Settlement Agreement.

Taylor counters that there was no false representation about the Sky Bar, its sale was immaterial to the Settlement Agreement, Bach did not reasonably rely on any alleged false statements, and the Settlement Agreement itself prohibits Bach's argument.

### II
### The Law

"To void a contract for fraudulent inducement, a party must establish six elements: (1) that the opposing party made a material representation; (2) that the representation was false; (3) that when the opposing party made the representation, the opposing party knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) that the opposing party made the representation with the intention that the party would act upon it; (5) that the party acted in reliance upon it; and (6) the party suffered damage." *Piets v Triple L Land Development, LLC,* unpublished per curiam

4

opinion of the Court of Appeals, issued May 20, 2021 (Docket No. 350445), p 3. In a parallel fashion, "The elements of fraudulent misrepresentation are (1) the defendant made a material representation, (2) the representation was false, (3) when making the representation, the defendant knew or should have known it was false, (4) the defendant made the representation with the intention that the plaintiff would act upon it, and (5) the plaintiff acted upon it and suffered damages as a result." *M&D, Inc v W B McConkey,* 231 Mich App 22, 27 (1998). Furthermore, "A party's reliance on oral promises or representations made before entering into a fully integrated written contract is deemed to be per se unreasonable." *Carey v Foley & Lardner, LLP,* unpublished per curiam opinion of the Court of Appeals, issued August 9, 2016 (Docket No. 321207), p 10. See also *Novak v Nationwide Mut Ins Co,* 235 Mich App 675, 689-691 (1999). (plaintiff's reliance on certain statements was not reasonable because the statements contradicted the parties' written contract).

### III
### Discussion

In light of the Findings of Fact, no misrepresentation was made which eviscerates Bach's position. *Piets,* slip opin. at 3. Cf. *M&D, Inc,* 231 Mich App at 27. Furthermore, Bach's position fails because the status of the Sky Bar was immaterial to Bach in connection with the Settlement Agreement; Bach did not reasonably rely on the ownership status of the Sky Bar when he entered the Settlement Agreement; and any mistake of fact held by Bach was released by and merged into the Settlement Agreement.

*Novak,* 235 Mich App at 689-691; *M&D, Inc,* 231 Mich App at 27; *Carey,* slip opin. at 10; *Piets,* slip opin. at 3. Bach's Motion is motivated by settlement remorse and is entirely without merit.

## ORDER

In light of the foregoing Findings of Fact and Conclusions of Law, Defendant Dean Bach's Motion to Set Aside Settlement Agreement and Request to Lift Stay is DENIED.[3]



/s/Michael Warren

---

[3] In addition, because of the passage of time and the Court's findings and ruling in connection with this Motion, the Court considers the pending Plaintiff Taylor's Emergency Motion to Enforce the Settlement Agreement to be stale. Taylor is certainly entitled to file a current Motion if he so desires.

**EXHIBIT 2**

*FUSION OIL CO V CRESCENT PETROLEUM, INC*, NO. 04-73395, 2008 WL

11399627, AT \*2 (ED MICH, FEBRUARY 6, 2008)

Fusion Oil Company v. Crescent Petroleum, Inc., Not Reported in Fed. Supp. (2008)

2008 WL 11399627
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

FUSION OIL COMPANY, New Millennium, Inc.,
and Hassan Harajli, Plaintiffs/Counter-Defendants,

v.

CRESCENT PETROLEUM, INC.,
et al., Defendants/Counter-Plaintiffs.

Case No. 04-73395
|
Signed 02/06/2008

**Attorneys and Law Firms**

Cyril C. Hall, Law Offices of Cyril C. Hall, P.C., Dearborn, MI, Robert E. Forrest, Kerr, Russell, Detroit, MI, for Plaintiffs/Counter-Defendants.

Shereef H. Akeel, Akeel & Valentine, Troy, MI, for Defendants/Counter-Plaintiffs.

**ORDER DENYING GARAN LUCOW MILLER'S MOTION TO INTERVENE**

DENISE PAGE HOOD, United States District Judge

**I. INTRODUCTION**

**\*1** These matter is before the Court on Garan Lucow Miller's ("Garan's") Motion to Intervene as an Interested Party and to Obtain Payment from Escrowed Funds, filed on August 7, 2007. Comerica Bank ("Comerica") filed a response on August 15, 2007. Defendants filed a response on August, 20, 2007.

**II. FACTS**

The parties to this action entered into various agreements involving a fuel station located at 30861 John R. Road, Madison Heights, Michigan. Plaintiffs initiated the instant action asserting claims of breach of their motor fuel agreement and land contract. Defendants filed a counterclaim, alleging, *inter alia*, breach of the land contract.

Under the terms of the land contract, Defendants were to make land contract payments to Plaintiffs. Plaintiffs, who

had granted to Comerica Bank ("Comerica") a mortgage on the property, would, in turn, submit those payments to Comerica. Because Defendants were not making these payments, the Court entered an Amended Order Declaring Escrow ("Escrow Order") on April 19, 2006. The Escrow Order established an escrow account to which Defendants made land contract payments pending the outcome of this litigation. On June 4, 2007, the Court permitted Garan to withdraw as counsel for Plaintiffs, because of a breakdown in the relationship between Garan and Plaintiffs; Plaintiffs were not fulfilling their financial obligations to Garan. On July 10, 2007, Comerica filed a motion to intervene in the suit, which the Court granted. On September 9, 2007, the Court entered an Order of Default Judgment ("Default Order") against Plaintiffs. The Default Order, *inter alia*, disbursed $110,000 of the $189,000 escrow account to Comerica and left the remaining $70,000 in the account pending the outcome of the instant motion.

**III. LAW & ANALYSIS**

**A. Motion to Intervene as an Interested Party**

Garan seeks to intervene as an interested party in this action pursuant to Federal Rule of Civil Procedure 24(a)(2) ("Rule 24(a)(2)"). Rule 24(a)(2) states:

> (a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).

The Rule 24(a)(2) "interest" sought by Garan is $68,788.29 in legal fees. Garan seeks to obtain payment of these fees from the escrow account, relying upon the doctrine of attorney charging liens. A common law charging lien is an attorney's

equitable right to have the fees and costs for his services secured out of the judgment or recovery in a particular suit. *Mahesh v. Mills*, 237 Mich. App. 359, 361 (1999). In Michigan, attorneys are generally permitted to intervene in an action to protect charging lien interests. *See id.* at 364-65.

**\*2** Where an attorney withdraws from a case, his reasons for doing so determine whether he forfeits his charging lien. *Ambrose v. The Detroit Edison Co.*, 65 Mich. App. 484, 488 (1975). If he withdraws without cause, he forfeits the lien; if he withdraws for good cause, he does not forfeit the lien for services already rendered. *Id.* Good cause exists when the client caused a total breakdown of the attorney-client relationship. *Id.*

Where another party claims an interest in the same judgment or recovery as the attorney, the nature of the competing interest matters in determining whether the attorney charging lien is superior to the other party's interest. An attorney charging lien is superior to an opposing party's right of setoff against the same judgment. *Mahesh*, 237 Mich. App. at 362 (citations omitted). However, a charging lien is not superior to a prior-in-time security interest unless equitable considerations demand otherwise. *Warner v. Tarver*, 158 Mich. App. 593, 599-600 (1986). For example, if a third-party with valid prior-in-time security interest knew or should have known that the attorney's efforts would inure to its benefit and that the attorney would look to the fruit of those efforts for payment of attorney fees, equity may demand that the attorney's lien be given priority. *Id.* This is especially so if the third-party never offers any assistance to the attorney in obtaining the judgment. *See id.*

Defendants and Comerica oppose Garan's efforts to recover its attorneys fees from the escrow account. They argue that Garan waived its right to an attorney lien by withdrawing as Plaintiff's counsel; that the escrow account is not a fund and not the fruit of Garan's efforts; and that Comerica's superior mortgage interest entitles it to all proceeds from the escrow account. In the alternative, they argue that Garan's fees are excessive. [1]

The Court concludes that Garan did not waive its right to assert an attorney lien by withdrawing from the case. A firm does not forfeit the lien for services already rendered if it withdraws for good cause. *Ambrose*, 65 Mich. App. at 488. Here, Garan withdrew for good cause; its client caused a total breakdown in the attorney-client relationship by failing to pay attorneys fees.

However, as Defendants and Comerica correctly argue, the $189,000 escrow account is neither a fund nor a product of Garan's efforts. The escrow account is not a fund, because it cannot be deemed Plaintiffs' "ultimate recovery." *Id.* Plaintiffs had no recovery in this suit. Rather, this Court entered a Default Judgment Order against Plaintiffs and for Defendants in this suit on September 11, 2007. The escrow account is also not a product of Garan's efforts. Although Garan's motions to the Court may have prompted the establishment of a more formalized process by which Defendants deposited their land contract payments into an account, it is undisputed that Defendants were already making such payments to their attorney's trust account before Garan's intervention. Moreover, because the escrow account is not a fund or the product of Garan's efforts, it also not a Rule 24(a)(2) "interest."

**\*3** Even if Garan's efforts had created the escrow account, its attorney lien would not be superior to Comerica's prior-in-time security interest. Equity does not call for Garan's attorney lien to prevail here, because Comerica did not use Garan's efforts for its own benefit. Rather, Comerica hired its own attorney and filed a motion to intervene to insure that it obtained Defendants' land contract payments.

### IV. CONCLUSION
Accordingly,

IT IS HEREBY ORDERED that Garan Lucow Millers' Motion to Intervene as an Interested Party and to Obtain Escrowed Funds [Docket No. 125, filed on August 7, 2007] is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2008 WL 11399627

*Fusion Oil Company v. Crescent Petroleum, Inc., Not Reported in Fed. Supp. (2008)*

## Footnotes

1   Defendants and Comerica raise two additions arguments. They argue that this Court cannot sustain Garan's Motion because the escrow account is the property of a state court **receivership** estate, and that 15 U.S.C. § 2801 precludes Garan's recovery, because Garan was not successful in the outcome of this litigation. However, because the Court denies Garan's motions on other grounds, these arguments will not be addressed.

---

**End of Document**                                                 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 3**

**EMAIL WITH DAWDA MANN REGARDING MACWILLIAMS LAW**

**FEES**

**Paige Serra**

| | |
|---|---|
| **From:** | Frances B. Wilson <fwilson@dmms.com> |
| **Sent:** | Tuesday, July 26, 2022 3:21 PM |
| **To:** | Sara MacWilliams |
| **Cc:** | Paige Serra; Michael Shapiro; Sam Madorsky |
| **Subject:** | HNB v Buccaroo, et al      RE: 22-cv-11290 GAD EAS |

Ms. MacWilliams,

Thank you for your email.  In response:

1.  Under the Order Appointing Receiver ("OAR") the Receiver will not be paying any pre-receivership liabilities at this time.
2.  Please turn over an accounting of all funds that you held in your Firm's account(s).
3.  Please turn over the remaining funds being held in your Firm's Trust Account, to the Receiver, as required under the OAR.
4.  Please direct the "would-be" buyer of Vester to contact Mr. Michael Shapiro of the Receiver's office to discuss this matter.  Please provide me with the name and contact information you have for the purchaser and his counsel.
5.  Also, if one exists, please provide a fully executed agreement between the purchaser and the seller.  Any claimant or creditor of any of the entities making a claim against Receivership Property (as defined in the OAR) will be advised that the Judge's Drain's OAR enjoins any actions against Receivership Property.
6.  At this time, are you representing Mr. Taylor?  Please advise so the Receiver can determine if a turnover letter needs to be issued to Mr. Taylor directly.

Regards,
Frances


**Frances Belzer Wilson, Esq.**
Dawda Mann Building
Dawda, Mann, Mulcahy & Sadler, PLC
39533 Woodward Avenue, Suite 200
Bloomfield Hills, MI 48304
(248)642-4282
(248)642-7791 – fax
website: www.dawdamann.com
Download Vcard



DISCLAIMER: The information contained in this electronic message and any attachments may contain confidential or privileged information and is intended for use solely by the above-referenced recipient. Any review, copying, printing, disclosure, distribution, or other use by any other person or entity is strictly prohibited. If you are not the named recipient, or believe you have received this message in error, please immediately notify the sender by replying to this message and then deleting the copy you received.

**The information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is indicated.**

---

**From:** Sara MacWilliams <sm@macwilliamslaw.com>
**Sent:** Tuesday, July 26, 2022 11:40 AM
**To:** Frances B. Wilson <fwilson@dmms.com>
**Cc:** Paige Serra <paige@macwilliamslaw.com>
**Subject:** 22-cv-11290 GAD EAS

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Frances,

We do have a little bit of money in our trust account, under $16,000. However we also have unpaid bills for the work Ms. Serra, copied, has been doing on behalf of the companies to ensure the properties were preserved with electricity and gas on, insurance brought back up to date, and addressing legal claims. She will send you a spreadsheet of the expenses incurred from the money to date. We've only been billing her out at $200 for this work, about $10,000 of which was agreed by Huntington to be paid in a closing on the Vester street property that ultimately never closed. Do you want to work out an agreement to address those unpaid bills or is that something that we need to file a motion about?

Separately, the would-be buyer of Vester continues to ask us when the sale will close. Someone should follow up with him soon, he does have counsel and had planned to file a complaint for specific performance.

Best,

Sara K. MacWilliams
MacWilliams Law PC
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
(248) 432-1586 (main line)
(248) 514-5399 (direct and mobile)
(248-847-1336) (fax)


This email may contained privileged and confidential or attorney work product protected communiciations. Distribution of these communications waives the privilege. Please do not forward outside your organization without authorization.