# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK,
A national banking association,

    Plaintiff,

vs.
                                            Case No. 22-cv-11290-GAD-EAS
                                            Hon. Gershwin A. Drain
                                            Magistrate: Elizabeth A. Stafford

BUCCAROO LLC, a Michigan limited liability
company, BUCAROO TOO LLC, a Michigan limited
liability company, DINO DROP, INC., a Michigan
corporation, 45 DEGREE HOSPITALITY, INC., a
Michigan corporation, WILLIAM ROBERT DUKE
TAYLOR, and DEAN BACH, jointly and severally,

    Defendants.

---

## THE RECEIVER'S RESPONSE TO MacWILLIAMS LAW'S MOTION REGARDING PAYMENT OF FEES INCURRED FOR BENEFIT OF RECEIVERSHIP ESTATE

NOW COMES the Receiver, M. Shapiro Management Company LLC, by and through its counsel, Dawda, Mann, Mulcahy & Sadler PLC, and for its Response to MacWilliams Law's Motion Regarding Payment of Fees Incurred for Benefit of Receivership Estate, states:

# STATEMENT OF ISSUES PRESENTED

1. Whether the Court should refuse to require immediate payment of unsubstantiated attorney's fees from Receivership Property against the plain terms of the Order Appointing Receiver entered in this matter.

   *a. The Receiver answers: Yes*

2. Whether the Court should refuse to recognize an alleged attorney's lien against property that is not the fruit of a judgment or settlement obtained by the charging attorney.

   *a. The Receiver answers: Yes*

3. Whether the Court should order MacWilliams Law to immediately turn over the $15,844.22 of Receivership Property held in its firm IOLTA Account to the Receiver.

   *a. The Receiver answers: Yes*

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. FED. R. CIV. P. 66.

2. *Liberte Capital Group, LLC v. Capwill,*
   462 F.3d 543 (6th Cir. 2006).

3. Michigan's Receivership Act, MICH. COMP. LAWS § 554.1011 *et seq.*

4. Stipulation and Order Appointing Receiver, ECF 6.

5. *Kysor Industrial Corp. v. D.M. Liquidating Co.,*
   11 Mich. App. 438; 161 N.W.2d 452 (1968).

6. *Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Co.,*
   824 F. Supp. 2d 764 (E.D. Mich., 2011).

# THE RECEIVER'S RESPONSE TO MacWILLIAMS LAW'S MOTION REGARDING PAYMENT OF FEES INCURRED FOR BENEFIT OF RECEIVERSHIP ESTATE

## I. INTRODUCTION

On August 18, 2022, MacWilliams Law PC ("MacWilliams Law") filed its Motion Regarding Payment of Fees Incurred for the Benefit of the Receivership Estate (the "Motion") with this Court. *See* Motion, ECF No.14, Page ID 248-275. Through the Motion, MacWilliams Law seeks the payment of certain fees for its alleged work as "unofficial receivers" of Buccaroo, LLC; Bucaroo Too, LLC; Dino Drop, Inc.; and 45 Degree Hospitality, Inc. (the "Entity Defendants").

In essence, MacWilliams Law claims a super-priority attorney's lien in the $15,844.22 held in MacWilliams Law's attorney trust account, to which it claims it is entitled to payment over the rights of any other creditors of the Entity Defendants and in contravention of the Stipulation and Order Appointing Receiver (the "OAR") [ECF 6, PageID 175-217].

The plain terms of the OAR do not support MacWilliams Law's position. For the reasons stated herein and in the Receiver's Motion to Compel MacWilliams Law PC, Defendant Taylor, and Entity Defendants' Compliance with the Order Appointing Receiver [ECF 15, PageID 276-299] the funds currently held by MacWilliams Law should be immediately turned over to the Receiver in compliance with the OAR.

1

## II. FACTS

### A. THE STIPULATED OAR PROVIDES THAT THE RECEIVER WILL NOT PAY PRE-RECEIVERSHIP LIABILITIES AND REQUIRES MACWILLIAMS LAW TO TURNOVER FUNDS

*On the stipulation of the parties*, this Court entered the OAR appointing M. Shapiro Management Company LLC, by its authorized agent, Mark S. Kassab, to act as Receiver over the real and personal property of the Entity Defendants on July 7, 2022. The OAR expressly provides that the Receiver and the Receiver's agents:

> shall not be liable for any claim, obligation, liability, action, cause of action, cost or expense of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, its business operations, or the Receivership Property, or Collateral *arising out of or relating to events or circumstances occurring prior to the entry of this [OAR], including without limitation*, any contingent or unliquidated obligations and *any liability from the performance of services rendered by third parties for the benefit or on behalf of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality*, and any liability to which it is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Receivership Property or Collateral and operation of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's business (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). *Huntington, the Receiver, and the Receiver's agents shall not be obligated to advance any funds to pay any Pre-Receivership Liabilities*. Notwithstanding the foregoing, *with the prior written consent of Huntington (but not otherwise), the Receiver may fund Pre-Receivership Liabilities from funds collected from the operation of the Receivership Property.*[1] OAR, attached as **Exhibit 1** at p. 31-32, ¶ 22 (emphasis supplied).

---

[1] The stipulated OAR defines "Receivership Property" as, among other things:

   a. The Property; and,

Under Paragraph 22 of the OAR, the Receiver is not liable for the fee for any services provided to the Entity Defendants or relating to any Receivership Property rendered prior to the entry of the OAR. At Receiver's discretion, and only with the written consent of Plaintiff Huntington National Bank ("Huntington") may the Receiver pay any pre-receivership liabilities.

Moreover, in the prefatory paragraphs to the OAR, MacWilliams Law, stipulated to the following:

1. That Huntington, in 2013, 2018, and 2019, extended Commercial Credit Facilities to the Entity Defendants in the total amount of $1,600,000.00 and was granted a security interest in the real property that is the subject of this action and all of the personal property of the Entity Defendants pursuant to the loans and guarantee executed by the Entity Defendants. *See* **Exhibit 1** at p. 6-7, ¶¶ 2-5.

2. That Huntington's security interest in all of the personal property of the Entity Defendants is properly perfected. *Id.* at p. 8, ¶ 7.

---

b. All tangible and intangible property, including intellectual property, used or useable in connection with the operations of the Property including, without limitation, insurance premium refunds, insurance proceeds, condemnation awards, utility deposits and deposits of every other kind related to the Property, causes of action, drawings, plans, specifications, escrow agreements, and all Collateral; and,

c. All Income . . .

**Exhibit 1**, at p. 11-12, ¶ vii. Further, the definition of "Income" includes "all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, accounts at credit unions, **IOLTA accounts** . . ." **Exhibit 1**, at p. 10-11, ¶ v (emphasis supplied).

3

3. That Entity Defendants Buccaroo and Bucaroo Too failed to pay the real estate taxes applicable to the real properties owned by said Entity Defendants. *Id.* at p. 8, ¶ 8.

4. That Huntington is entitled to possession of the personal property of the Entity Defendants upon default under the loans and guarantee. *Id.* at p. 8, ¶ 9.

Thus, MacWilliams Law, for its client, has stipulated that Huntington has a valid security interest in all property—real and personal—of the Entity Defendants.

Pursuant to the terms of the OAR, on July 26, 2022, after receiving MacWilliams Law's request for payment for its legal services which are the subject to the Motion, Receiver's counsel discussed MacWilliams Law's request with Huntington's counsel. Huntington's counsel did not give permission (in writing or otherwise) for Receiver to pay the pre-receivership fees claimed by MacWilliams Law. Additionally, the funds being held by MacWilliams Law are critical to the Receivership paying other legitimate expenses of the Receivership Estate (that came due after the appointment of the Receiver), including the payment of insurance premiums and real estate taxes. *See e.g.* **Exhibit 2**, Emails between Paige Serra and Frances Belzer Wilson, at p. 1; **Exhibit 3**, Delinquent Tax Notices.

Under the OAR, the Defendants, and their employees, agents, officers, managers, and directors agreed and are required "to surrender all of the following relating to the Receivership Property to the Receiver", including without limit:

- "All documents, books, records, computer files and records concerning the finances, rents, operation and management of the Receivership Property." **Exhibit 1** at p. 15, ¶ 1.4(h).

- "All cash and deposits owned by or in the possession of any of the Defendants pertaining to the Receivership Property and the Collateral." **Exhibit 1** at p. 15, ¶ 1.4(m).

Non-party Financial Institutions are also required to comply with the OAR.

All Financial Institutions, including law firms holding Receivership Property, are

> ...ordered and directed to deliver such deposits and such records as the Receiver may reasonably request with respect to such foregoing accounts including, but not limited to, all past, present, or future account statements, an accounting of all deposits, withdrawals, disbursements and transactions, other documents and signature cards.

**Exhibit 1** at p. 16, ¶ 1.5. Similarly, "all those having claims against the Receivership Property, who receive notice of" the OAR are enjoined from:

- Demanding, collecting, receiving, discounting, or using any of the "Income"; **Exhibit 1** at p. 30, ¶ 20(b);

- Interfering "in any manner with the discharge of the Receiver's duties under" the OAR, "or the possession, operation and management of the Receivership Property or Collateral by the Receiver"; **Exhibit 1** at pp. 30-31, ¶ 20(d)

- Expending, disbursing, transferring, assigning, selling, conveying, devising, pledging, concealing, or in any manner whatsoever, dealing in or disposing of the whole or any part of the Receivership Property; **Exhibit 1** at p. 31, ¶ 20(e); and

- Taking any action which may tend to impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Property. **Exhibit 1** at p. 31, ¶ 20(f).

Moreover, MacWilliams Law's position in its Motion that the Howard Law Firm PLC is in possession of $6,000 of Receivership Property, which is being held in trust, is contrary to communications received from Derek Howard of the Howard Law Firm. *See* **Exhibit 4**, Emails between Derek T. Howard and Frances Belzer Wilson. By way of informational background, the Howard Law Firm was retained by Defendant Taylor on behalf of the Entity Defendants to represent the Entity Defendants in various matters, including a lawsuit Taylor instituted against Defendant Bach and the Entity Defendants in Oakland County Circuit Court, Case No. 21-186359-CB. Under an agreement dated March 8, 2021, the Howard Law Firm was to "bill against the retainer the MacWilliams Law PC is holding so long as funds remain." *Id*.

Thereafter, the Howard Law Firm was paid the amount of $3,540 from the Doerr Law Firm PLLC IOLTA account. There remains a balance allegedly owed to The Howard Law Firm, as Pre-Receivership Liabilities, the amount of $6,600. *Id*.

**B.    THE JULY 16, 2021 SETTLEMENT AGREEMENT BETWEEN DEFENDANTS TAYLOR AND BACH REQUIRED DEFENDANT TAYLOR TO WIND DOWN THE ENTITY DEFENDANTS**

Although Movant relies on a July 16, 2021 Settlement Agreement in the Oakland County Circuit Court Case, No. 21-186604-CB, it failed to attach a copy to its Motion. It appears the Oakland County Circuit Court Case was filed by Defendant

6

Taylor (as plaintiff), against Defendant Bach and the Entity Defendants. Plaintiff Huntington was not a party to the case.

The parties in the Oakland County Circuit Court Case entered into a Settlement Agreement, dated July 12, 2021, which generally provides for: (1) the settlement of certain business disputes between Defendant Bach and Defendant Taylor; (2) the sale of the real properties that now make up a part of the Receivership Properties; and (3) the settlement of the "Pawnee Case" among other issues. *See*, Settlement Agreement dated July 16, 2021, attached as **Exhibit 5**.

The Settlement Agreement provides that "[t]he Gaylord property up north will be sold. Duke will manage the sale process." **Exhibit 5** at ¶ 2. The Settlement Agreement also provides that "[t]he other three Oakland County properties will be sold. Duke will manage the sales." **Exhibit 5** at ¶ 3. The Settlement Agreement further provides that:

> $20,000 from the Gaylord restaurant credit union account up north shall be paid in the MacWilliams trust account funds within one week of the execution of this Agreement and used to settle the Pawnee case. The balance shall be payable to Dean and he can close the account. Dean will provide bank statements for the credit union account from the date of inception of the account going forward (or electronic access). (The Pawnee case involves equipment used at the Gaylord restaurant and thus funds from that restaurant should help settle the debt. That and other cases need to be settled so we can sell the equipment free and clear and get the property sold.) **Exhibit 5** at ¶ 5.

The Settlement Agreement further provides that "[t]he $6,000 in Butzel account shall be used towards Dean's legal fees. In exchange for Dean's retention of the approximately $10,000 remaining in the credit union, $16,000 of the funds in MacWilliams trust account shall be applied to *Duke's legal fees*." **Exhibit 5** at ¶ 6.

The Settlement Agreement further provides that, "[a]nything left in the MacWilliams trust account shall be used to pay business and property debts and expenses necessary to get to the closing table (legitimate expenses like insurance, taxes, utilities). Duke's attorneys will continue to disclose and discuss the expenses from the funds." **Exhibit 5** at ¶ 7.

Nothing in the Settlement Agreement provides that MacWilliams Law is to act as a receiver, whether formally or informally. Moreover, funds held in the MacWilliams Law trust account were to be used to pay the legitimate expenses of the Entity Defendants and Defendant Taylor's legal expenses. However, upon information and belief, those expenses were not paid current through July 7, 2022 (the date the stipulated OAR was entered), where insurance premiums and utilities were outstanding. The Receivership Estate currently has no funds to pay the legitimate expenses of the receivership and to protect the Receivership Property.

### C. MacWilliams Law Has Failed to Provide any Bills, Accountings, Statements of Work, or Other Documents to Substantiate Its Alleged Legal Fees

MacWilliams Law seeks payment of $21,073.00 in legal fees allegedly owed to it by the Entity Defendants. Despite seeking such a large sum, MacWilliams Law has failed to attach to its Motion or otherwise provide to the Receiver: (a) a full accounting of the work performed to earn such fees; (b) any bills submitted to the Entity Defendants for such work; (c) any retainer agreement between MacWilliams Law and any Entity Defendants; or (d) any other similar document that might substantiate the amount of legal fees sought, and the proper party to be charged for such fees.[2]

MacWilliams Law should be required to turn over the necessary invoices and accountings (and other supporting documentation), together with the alleged Huntington written approval for payment of the same, for the Receiver to consider the request for payment of the Pre-Receivership Liabilities at issue.

---

[2] The Receiver, through its counsel has previously requested such documents from MacWilliams Law but has not received such supporting documents in response to that request as more fully discussed in the Receiver's Motion to Compel MacWilliams Law PC, Defendant Taylor, and Entity Defendants' Compliance with the Order Appointing Receiver. [ECF 15, PageID 276-299].

## III. ARGUMENT AND ANALYSIS

### A. THE RECEIVER IS BOUND BY THE TERMS OF THE OAR

The appointment of a receiver in federal court is governed by Federal Rule of Civil Procedure 66. That rule provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." FED. R. CIV. P. 66.

A receiver is an agent of the court with limited powers which are defined by the order of his appointment. See *Cty. of Oakland by Kuhn v. City of Detroit*, 784 F. Supp. 1275, 1286 (E.D. Mich. 1992). "The role of a receiver is to safeguard disputed assets, to suitably administer the receivership property, and to assist the court in achieving a final, equitable distribution of the assets." *Liberte Capital Group, LLC v. Capwill*, 248 Fed. App'x 650, 655 (6th Cir. 2007). Generally, a receiver's powers extend to the limits of the order appointing the receiver. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006).

The Receiver has acted in accordance with the plain terms of the OAR. The OAR prevents the Receiver from using the Receivership Property to pay Pre-Receivership Liabilities—like the attorney's fees allegedly owed to MacWilliams Law—without the prior written consent of Huntington. See **Exhibit 1** at p. 31-32, ¶ 22. Huntington has not consented to the Receiver's payment of these Pre-Receivership Liabilities to MacWilliams Law.

Moreover, as discussed in the Receiver's Motion to Compel MacWilliams Law PC, Defendant Taylor, and Entity Defendants' Compliance with the Order Appointing Receiver [ECF 15, PageID 276-299], the OAR requires that MacWilliams Law turn over any funds held in its attorney IOLTA Account to the Receiver upon demand—and provide complete accountings and documentation of all Receivership Property held by MacWilliams Law. MacWilliams Law has failed to comply with the plain terms of the OAR to which it stipulated.

### B.  ATTORNEY'S LIENS AGAINST THE RECEIVERSHIP PROPERTY

MacWilliams Law also alleges that it has an attorney's lien in the Receivership Property, because its work saved the Entity Defendants money. In federal court, whether an attorney's lien exists, and the effect of such an attorney's lien is determined under the applicable state's law. See *In re Fitterer Engineering Associates, Inc.*, 27 Bankr. 878, 879-80 (Bankr. E.D. Mich. 1983). In Michigan, attorney's liens are not governed by statute, and are simply a product of the common law. See *Bruce v. United States*, 127 F. Supp. 858, 861 (E.D. Mich. 1955).

There are two kinds of attorney's liens recognized in Michigan. See *Laborers Pension Trust Fund-Detroit & Vicinity v. Interior Exterior Specialists Co.*, 824 F. Supp. 2d 764, 774 (E.D. Mich., 2011). The first is known as a possessory or retaining lien which "is [the attorney's] right to retain possession of all documents, money, or other property of his client coming into his hands professionally until a general

balance due him for professional services is paid." *Kysor Industrial Corp. v. D.M. Liquidating Co.*, 11 Mich. App. 438, 444; 161 N.W.2d 452 (1968). Notably, a retaining lien is not lost by transferring possession to either the court or another person pursuant to a court order. See *Kysor*, 11 Mich App at 446.[3]

The second is known as a special or charging lien, which "is an equitable right to have the fees and costs due [to an attorney] for services in a suit secured to him out of the *judgment or recovery* in that particular suit." *Kysor*, 11 Mich. App. at 444. The Michigan Court of Appeals has held that funds received from the sale of property pursuant to a settlement agreement negotiated by an attorney are not subject to such lien as such sale is not a "recovery". See *Dunn v. Bennett*, 303 Mich. App. 767, 778, 846 N.W.2d 75, 81 (2014).

While an attorney's charging lien automatically attaches to its collateral, "an attorney's lien is subject to any rights in the property that are valid against the client at the time the lien attaches; that is, [its] priority is determined by the first-in-time rule." *Laborers Pension*, 824 F. Supp. 2d at 774; citing *Warner v. Tarver*, 158 Mich. App. 593, 598, 405 N.W.2d 109, 112 (1986); *Local 58, Int'l Bhd. of Elec. Workers*

---

[3] Michigan's Receivership Act, MICH. COMP. LAWS § 554.1011 et seq., provides that upon the demand of the receiver a person shall "if the person has possession, custody, or control of receivership property, turn the property over to the receiver." Mich. Comp. Laws § 554.1021(1)(b). The sole exception to that requirement is if the person has a security interest in the property held by that person and the perfection of that person's security interest depends on continued possession of the property. *See* Mich. Comp. Laws § 554.1021(3).

*v. G.T. Einstein Electric, Inc.*, 932 F. Supp. 974, 979 (E.D. Mich. 1996); see also *Kysor*, 11 Mich. App. at 445.

Finally, Michigan's Court of Appeals has recognized the ability of attorneys to claim an equitable lien for the recovery of an attorney's fees. See *Schrot v. Garnett*, 370 Mich. 161, 164, 121 N.W.2d 722, 723 (1963). An equitable lien can only be established by "an agreement that both identifies property and shows an intention that the property will be security for an obligation." *Bakian v. Nat'l City Bank (In re Estate of Moukalled)*, 269 Mich. App. 708, 719, 714 N.W.2d 400, 407 (2006).

Here, MacWilliams Law has not established that there is any type of attorney lien on the funds held in its IOLTA Account. MacWilliams Law does not argue that it has a general or possessory lien in the Receivership Property held in its IOLTA Account. Even if MacWilliams Law had such a lien, that lien would still be subject to MacWilliams Law's duty to turn over such Receivership Property to the Receiver, as that turn over would not extinguish said lien. See *Kysor*, 11 Mich App at 446.

By application of the law, any argument by MacWilliams Law that it has a charging lien against the funds must fail, where the funds are not a judgment or recovery resulting from MacWilliams Law's work on a particular case. See *Dunn*, 303 Mich. App. at 778.

MacWilliams Law also does not claim to have an equitable lien in the funds held in MacWilliams Law's attorney trust account. Even if MacWilliams Law made

13

such an argument, that argument fails if MacWilliams Law has no writing expressly granting it such a lien.

Even if MacWilliams Law had any type of attorney's lien over any Receivership Property, such lien would still be subject to the first-in-time rule of priority. See *Laborers Pension*, 824 F. Supp. 2d at 774. The parties stipulated that Huntington's security interest in all of the personal property of the Entity Defendants is properly perfected. *See* **Exhibit 1**, at p. 8, ¶ 7. The Security Agreements at issue, and as stipulated by the parties, are all asset security agreements attaching to, among other personal property, all inventory, equipment, accounts, deposit accounts, money, and proceeds of the same. *See* **Exhibit 1**, at p. 6-7, ¶¶ 2-5. As any attorney's lien would not have attached until after Defendant William Robert Duke Taylor and Defendant Dean Bach entered into the Settlement Agreement on July 16, 2021, any attorney lien based on work occurring after that date would be subject to perfected senior secured interests against the Receivership Property, such as Huntington's secured interest. See *Laborers Pension*, 824 F. Supp. 2d at 774.

## IV. CONCLUSION

WHEREFORE, the Receiver, M. Shapiro Management Company, respectfully requests that this Court deny the Motion, and grant the relief sought in the Receiver's Motion to Compel MacWilliams Law PC, Defendant Taylor, and

Entity Defendants' Compliance with the Order Appointing Receiver [ECF 15, PageID 276-299].

Respectfully submitted,
DAWDA, MANN, MULCAHY & SADLER, PLC

By: /s/ Frances Belzer Wilson
Frances Belzer Wilson (P68650)
39533 Woodward Avenue, Suite 200
Bloomfield Hills, MI 48304-5103
fwilson@dmms.com
(248) 642-3700
Attorneys for M. Shapiro Management Company LLC,
Court-Appointed Receiver

Dated: August 31, 2022

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing document and exhibits on all attorneys of record via the Court's electronic filing system on August 31, 2022. I declare that the statement above is true to the best of my knowledge and belief.

/s/ Ashley D. Gooden
Ashley D. Gooden