# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THE HUNTINGTON NATIONAL BANK,
A national banking association,

      Plaintiff,

Vs.
                               Case no. 22-cv-11290-GAD-EAS
                               Hon. Gershwin A. Drain
                               Mag. Judge Elizabeth A. Stafford

BUCCAROO LLC, a Michigan limited liability
company, BUCAROO TOO LLC, a Michigan limited
liability company, DINO DROP, INC.,  a Michigan
corporation, 45 DEGREE HOSPITALITY, INC., a
Michigan corporation, WILLIAM ROBERT DUKE
TAYLOR, and DEAN BACH, jointly and severally,

      Defendants.
_____/
DAVID A. LERNER (P44829)
PLUNKETT COONEY
Attorneys for Plaintiff
38505 Woodward Avenue
Suite 100
Bloomfield Hills, MI  48304
(248) 901-4010
dlerner@plunkettcooney.com
_____/


STIPULATION FOR
<u>APPOINTMENT OF RECEIVER</u>

The Huntington National Bank (Huntington), Dean Bach individually and in his capacity as a member/shareholder of Buccaroo LLC, Bucaroo Too LLC, Dino Drop, Inc., and 45 Degree Hospitality, Inc., and William Robert Duke Taylor, individually and as a member/shareholder of Buccaroo LLC,, Bucaroo Too LLC,  Dino Drop, Inc.,  and 45 Degree Hospitality, Inc. file this their Stipulation for the Entry of an Order Appointing a Receiver over all the real and personal property of Buccaroo LLC,, Bucaroo Too LLC, Dino Drop, Inc.,  and 45 Degree Hospitality, Inc. including but not limited to all the real and personal property located at 177 Vester, Ferndale, Michigan; and 4055 Old US 27 South and 4029 Old US 27 South in Gaylord, Michigan and file this their Stipulation for Entry of the Order Appointing Receiver.

It is so stipulated.

Approved in form and substance:

| PLUNKETT COONEY | |
|---|---|
| BY: /s/David A. Lerner<br>    David A. Lerner (P44829)<br>Attorney for Plaintiff, Huntington<br>National Bank<br>38505 Woodward Ave – Ste 100<br>Bloomfield Hills, MI  48304<br>(248) 901-4010<br>dlerner@plunkettcooney.com | /s/Dean Bach<br>Dean Bach, individually and as<br>member/shareholder Buccaroo LLC,<br>Bucaroo Too LLC,  Dino Drop, Inc.,<br>and 45 Degree Hospitality, Inc. |

| | |
|---|---|
| /s/Sarah MacWilliams, Esq.<br>as per attached authorization of<br>6/29/2022 for<br><u>William Robert Duke Taylor</u><br>William Robert Duke Taylor,<br>individually and as<br>member/shareholder of  Buccaroo<br>LLC, Bucaroo Too LLC,  Dino Drop,<br>Inc.,  and 45 Degree Hospitality, Inc. | |

Dated: June 29, 2022

Open.01491.02564.29126519-1

<u>COPY OF TEXT MESSAGE CONVERSATION OF JUNE 29, 2022</u>
<u>BEGINNING AT  11:39 a.m.</u>

Sara:        Sorry, I can't talk right now.

David:       Please call me at 248 310 8829
             I just need a simple answer to a simple question
             I am getting involved in whatever Pawnee is.

Sara:        I'm in a deposition. Who is this?

David:       David Lerner.
             You texted me as I left you a message

Sara:        I already told you to go ahead and sign the stip. Pawnee is settled as to the
             companies and their attorney is getting the UCC released. Please stop emailing,
             texting and calling me, I am busy on other matters.

David:       Ok, so, I can sign your name on behalf of Duke in both his individual and as a
             member/ shareholder?

Sara:        Sign it! I didn't ask for any edits! And stop!

David:       Ok, I will sign the stipulation as it is worded . Signing your name in the
             signature block for Mr. Taylor in his individual capacity as in his capacity as
             member/ shareholder of Buccaroo LLC, Bucaroo Too, LLC, Dino Drop Inc and
             45 Degree Hospitality, Inc.  Thank you

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THE HUNTINGTON NATIONAL BANK,
A national banking association,

      Plaintiff,

Vs.                         Case no. 22-cv-11290-GAD-EAS
                                     Hon. Gershwin A. Drain
                                     Mag. Judge Elizabeth A. Stafford

BUCCAROO LLC, a Michigan limited liability
company, BUCAROO TOO LLC, a Michigan limited
liability company, DINO DROP, INC.,  a Michigan
corporation, 45 DEGREE HOSPITALITY, INC., a
Michigan corporation, WILLIAM ROBERT DUKE
TAYLOR, and DEAN BACH, jointly and severally,

      Defendants.

_____/
DAVID A. LERNER (P44829)
PLUNKETT COONEY
Attorneys for Plaintiff
38505 Woodward Avenue
Suite 100
Bloomfield Hills, MI  48304
(248) 901-4010
dlerner@plunkettcooney.com
_____/


**<u>ORDER APPOINTING  RECEIVER</u>**

Came on for consideration this day the Stipulation of Huntington National Bank (Huntington), Dean Bach in his individual capacity and as member/shareholder of Buccaroo LLC, Bucaroo Too, LLC, Dino Drop, Inc., and 45 Degree Hospitality, Inc. and William Robert Duke Taylor, individually and as a member/shareholder of Buccaroo LLC, Bucaroo Too, LLC, Dino Drop, Inc., and 45 Degree Hospitality, Inc. for the Appointment of a Receiver over all of the real and personal property of Buccaroo LLC, Bucaroo Too, LLC, Dino Drop, Inc., and 45 Degree Hospitality, Inc. . The Court having reviewed the Stipulation and being otherwise fully advised in the premises enters this as an Order of this Court and finds as follows:

1.    From time to time, Huntington extended credit and credit accommodations to Buccaroo LLC, Bucaroo Too LLC, Dino Drop, Inc., and 45 Degree Hospitality, Inc.

2.    Huntington extended a commercial credit facility to Buccaroo on or about March 29, 2013 in the principal amount of $489,000. This credit facility is documented by a Promissory Note and a Commercial Security Agreement. The Commercial Security Agreement grants to Huntington from Buccaroo a security interest in all of the personal property of Buccaroo LLC at 177 Vester. To secure the Buccaroo LLC Note, Buccaroo LLC  granted a mortgage on property located at 177 Vester in Ferndale, Michigan. The Mortgage was dated

March 29, 2013 and recorded May 3, 2013. Dino Drop, Inc. also granted a

Commercial Security Agreement on its property at 22736 Woodward and 177

Vester.

3.     Huntington further extended a Commercial Credit Facility to

Bucaroo Too LLC  on or about February 8, 2019 in the amount of $1,036,000.

This Credit Facility is documented by a Promissory Note, a Commercial

Security Agreement and a Mortgage on the property at 4029 US Old 27,

Gaylord, Michigan and at 4055 US Old 27 S, Gaylord, Michigan.  The Mortgage

is dated February 8, 2019 and recorded February 14, 2019.  The Commercial

Security Agreement grants a security interest to Huntington in all of Bucaroo

Too LLC's  personal property.

4.     Huntington further extended a Commercial Credit Facility to 45

Degree Hospitality, Inc. on June 27, 2018 in the principal amount of $75,000.

This Credit Facility is documented by a Promissory Note and a Commercial

Security Agreement.  The Commercial Security Agreement grants a security

interest in all of the personal property of 45 Degree.

5.     Dino Drop, Inc. executed a guarantee of the indebtedness of

Buccaroo and Bucaroo Too and granted a security interest to Huntington in the

liquor licenses at 177 Vester and 4055/ 4029 Old US 27 in Gaylord.

6.     On April 12, 2021 and on September 15, 2021 Huntington issued its Notice of Default, Demand for Payment and Reservation of Rights as Buccaroo, Buccaroo Too, and 45 Degree Hospitality had failed to pay the total outstanding indebtedness as provided for in the Notice of Default.  Notices of Default were further sent to Mr. Duke Taylor and Mr. Dean Bach along with Dino Drop, Inc. in their capacities as guarantors of the debts of Buccaroo, Bucaroo Too and 45 Degree Hospitality.

7.     Huntington's security interest in all of the personal property of Buccaroo, Bucaroo Too, 45 Degree Hospitality and Dino Drop are properly perfected as evidenced by UCC-1 Financing Statements filed with the Michigan Secretary of State.

8.     Buccaroo and Bucaroo Too failed to pay the real estate taxes assessed against 177 Vester, Ferndale, Michigan; 4055 US Old 27 and 4029 US Old 27 in Gaylord, Michigan. Huntington has further failed to be furnished with proof of insurance as required by the Notes, Security Agreements and Mortgages.

9.     Pursuant to the terms of the Security Agreements, Huntington is entitled to possession of the personal property of Buccaroo, Bucaroo Too, 45 Degree Hospitality and Dino Drop upon default.

10.    Under the terms of the Mortgages, upon the occurrence of an Event of Default , Buccaroo and Bucaroo Too consented to the appointment of a Receiver on the real property.

11.    Under the terms of the Security Agreements , upon the occurrence of an Event of Default, Buccaroo, Bucaroo Too, 45 Degree Hospitality and Dino Drop consented to Huntington taking possession of and selling the personal property, with or without the intervention of the Court.  Upon the failure to pay any taxes or insurance on the personal property, Buccaroo, LLC, Bucaroo Too, LLC, 45 Degree Hospitality, Inc. and Dino Drop Inc. consented to the appointment of a Receiver over the personal property.

12.    The failure to pay the real property taxes by Buccaroo and Bucaroo Too constitutes a default under the Mortgage and constitutes waste.  Buccaroo and Bucaroo Too consented to the appointment of a Receiver upon the failure to pay taxes.  In addition, Huntington has not been furnished with proof of insurance on the real property which further constitutes waste.  The failure to maintain insurance on the property further constitutes waste and  pursuant to the terms of the Mortgages, Buccaroo and Bucaroo Too consented to the appointment of a Receiver.

13.     By virtue of the foregoing and applicable law, the appointment of a Receiver for the real property and the personal property, with the power to sell same, is warranted and appropriate.

14.     Mr. Dean Bach has consented to the appointment of the Receiver.

The Court has reviewed the pleadings, is otherwise fully informed in the premises, and believes good causes exists for the granting of the relief sought in the Stipulation.

## **Definitions**

As used in this Order, the following terms shall have the following meanings:

i.      "**Approval**", when appearing without a modifier, means <u>either</u> Plaintiff's Approval <u>or</u> Court Approval.  If Approval is required, it may be given after the Receiver takes any action which requires Approval, with the same effect as if it was given before the Receiver took the action.

ii.     "**Collateral**" means all personal property of every kind wherever located of Buccaroo, LLC; Bucaroo Too, LLC; 45 Degree Hospitality, Inc. and Dino Drop, Inc. including , but not limited to furniture, fixtures, equipment, licenses, liquor licenses.

iii.    "**Confidential Information**" means all non-public information, including the Receiver's Reports, Budget, and Approved Budget, each as defined below.

iv.     "**Court Approval**" means Approval granted pursuant to an order of the Court.

v.      "**Income**" means, without limitation, all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, accounts at credit unions, IOLTA accounts, cash management or other financial

accounts, bank or other deposits and all other cash collateral (all whether now existing or later arising); current and past due earnings, revenues, rents, common area maintenance ("CAM") charges, issues and profits, accounts or accounts receivable (all whether unpaid, accrued or to become due); all claims to rent, issues, profits, income, cash collateral and all other gross income (including insurance proceeds and refunds and real estate tax refunds) derived with respect to the Property or business operations of the Property regardless of whether earned before or after entry of this Order, and expressly includes all of the above which was received after the first uncured event of default under the Mortgage that was not either (a) paid to Huntington or (b) used for ordinary and necessary business expenses regardless of whether received prior to or after the filing of the Complaint.

   v. "**Net Proceeds of Sale of the Receivership Property**" means be the gross sales price of the Receivership Property, less closing costs, prorations, sales commissions and other adjustments approved by Receiver and Huntington.

   vi. "**Plaintiff's Approval**" means written consent, including that given via e-mail, either directly by Huntington or by its counsel.

   vii. "**Property**" means all real and personal property located at 177 Vester, Ferndale , 4055 Old Us 27 S and 4029 Old US 27 S in Gaylord Michigan , as well as the liquor license for 22736 Woodward, Ferndale.

   vii. "**Receivership Property**" means and includes:

    a. The Property; and,

    b. All tangible and intangible property, including intellectual property, used or useable in connection with the operations of the Property including, without limitation, insurance premium refunds, insurance proceeds, condemnation awards, utility deposits and deposits of every other kind related to the Property, causes of action, drawings, plans, specifications, escrow agreements, and all Collateral; and,

    c. All Income; and,

    d. Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality

11

or on behalf of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, and whether pertaining to any tax period before or after the entry of this Order, and the right to institute or continue any contest, protest, or appeal of any *ad valorem* tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property; and,

        e.    All fixtures, trade fixtures, equipment, licenses, liquor licenses or tenant improvements of every kind or nature located in or upon or attached to or used or intended to be used in connection with the operation of the Property and any buildings, structures or improvements located on the Property (to the full extent of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's interest in same); and,

        f.    All permits, licenses, and other contracts and other intangible property pertaining to the Property and the operations thereupon; and,

        g.    All trade names and trademarks owned or used by Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality in connection with the Property; and,

        h.    All books, records, accounts or documents which in any way relate to the Property and Income; and,

        i.    All other property, estate, right, title and interest as described in the Mortgage, Note and other loan documents.

**1.**     <u>**Appointment of Receiver and the Receivership Property.**</u>

    1.1    **Qualification and Appointment.** Pursuant to Fed. R. Civ. P. 66, M. Shapiro Management Company LLC, by its authorized agent, Mark S. Kassab, whose address is 31550 Northwestern Highway, Suite 220, Farmington Hills, Michigan 48334 (the "<u>Receiver</u>"), is qualified to act and is appointed as receiver for the Receivership Property, effective upon entry of this Order and posting of the

bond (the "Effective Date")[1].  The Receiver's duty to act as Receiver is subject to the terms of this Order.

1.2 **Immediate Possession and Control of Receivership Property.**  As of the Effective Date, the Receiver is authorized to direct and take immediate possession and full control of the Receivership Property and to take such other actions as the Receiver deems reasonable and appropriate to take possession, to exercise full control over, to prevent waste, and to preserve, manage, secure and safeguard the Receivership Property.  Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality shall have neither possession nor control of, or any right to Income derived from the Receivership Property.  Nothing contained in this Order shall be construed to transfer title to any of the Receivership Property to the Receiver.  The Receiver is authorized to remove any officer, owner, manager, director, trustee, beneficiary, representative or agent of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality from control and/or management of the affairs of the Receivership Property.

1.3 **Actions and Furtherance of Possession and Con**trol.  The Receiver is authorized to take any reasonable actions which the Receiver shall deem necessary or appropriate to take possession of, to exercise full control over,

---

[1] For clarity. Buccaroo. Bucaroo Too. Dino Drop and 45 Degree Hospitality's obligations under this Order are effective upon its entry.

to prevent waste and to otherwise preserve, manage, maintain, secure and safeguard the Receivership Property.

1.4    **Surrender of Receivership Property.**  Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality its employees, agents, officers, managers and directors are directed to surrender all of the following relating to the Receivership Property to the Receiver, to the extent that they are in their possession, custody and control:

a.    All keys and access codes necessary for the Receiver to obtain possession of and to manage the Receivership Property, as provided in this Order.

b.    All documents and records useful in maintenance relating to the Receivership Property and the Collateral, including but not limited to, as applicable, building permits, plumbing and HVAC drawings, soil borings reports, surveys, environmental reports, architectural or design diagrams and building specifications.

c.    All work in process, materials, supplies, "punch lists" and other pending work orders with respect to construction at the Receivership Property, if any.

d.    All construction contracts and subcontracts for construction on the Receivership  Property, if any.

e.    All bids for contractor work, if any.

f.    All agreements with brokers or other commission agreements pertaining to sales or leases of the Receivership Property, or any portion thereof.

g.    All leases and other executory contracts, including all amendments, pertaining to the Receivership Property, or any portion thereof.

h.    All documents, books, records, computer files and records concerning the finances, rents, operation and management of the Receivership Property.

i.    A list of all accounts receivable and accounts payable, and all details regarding same.

j.    All documents identifying pending litigation and insurance claims.

k.    All utility agreements.

l.    Such other records pertaining to the Receivership Property as may be reasonably requested by the Receiver.

m.    All cash and deposits owned by or in the possession of the any of the Defendants pertaining to the Receivership Property and the Collateral.

n.    All documentation pertaining to contracts entered into by any of the Defendants relating to their business operations, the Receivership Property, and the Collateral.

1.5    **Financial Accounts and Records from Financial Institutions.** The Receiver shall take possession of and receive from all depositories, banks, credit unions, brokerages, trust and IOLTA Accounts at any law firm  and otherwise (collectively the "Financial Institutions"), any money on deposit in all such Financial Institutions belonging to or arising from the operation of the Receivership Property, whether such funds are in accounts titled in the name of

Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, its property manager, managers, members, agents, representatives, affiliates, parents or subsidiaries, or its respective employees (collectively, "the Bucaroo Parties"), but excluding any monies paid to or held by Huntington or its agents as security for the repayment of the Loan.  As of the Effective Date, all Financial Institutions are ordered and directed to deliver such deposits and such records as the Receiver may reasonably request with respect to such foregoing accounts including, but not limited to, all past, present or future account statements, an accounting of all deposits, withdrawals, disbursements and transactions, other documents and signature cards to the Receiver.  All Financial Institutions are further ordered and directed to follow and adhere to all directions of the Receiver and of the Receiver's agents or employees specifically designated by the Receiver to act on the Receiver's behalf concerning any of the Bucaroo Parties accounts.  The Receiver is empowered to open or close any such accounts, using the Bucaroo Parties Tax Identification Number, in the Bucaroo Parties name or in the name of the Receiver, in the Receiver's sole discretion.  The Receiver shall deposit monies and funds collected in connection with the Receivership Property at one or more federally insured banking institutions or savings associations with offices in the State of Michigan, which are not parties to this case.  The Bucaroo Parties shall cooperate and assist the Receiver in obtaining any such funds.  In the event the amounts in

such accounts exceed the federal insurance limit, the Receiver may obtain a surety

bond (interest or noninterest bearing) to protect such excess amounts.

2.      **Powers and Duties of Receiver.**  The Receiver shall be vested

with and shall discharge the following authority, powers and duties:

a.   The maintenance, securing, management, operation, leasing (upon terms acceptable to Huntington) and preservation of the Receivership Property.

b.   The assumption of control over the Receivership Property, including all deposits, security deposits, and other cash collateral relating thereto.

c.   The maintenance of one or more separate accounts, in the Receiver's own name, as Receiver for the Receivership Property and the Collateral, from which the Receiver shall disburse all authorized payments, as provided in this Order.

d.   The preparation and maintenance of books, records and financial reports of the Receivership Property, including but not limited to operating and income statements, balance sheets, and all other statements prepared for the Receivership Property, and provide copies of them to the parties to this action, through their counsel.

e.   The purchase of such insurance as the Receiver deems appropriate for the preservation and protection of the Receivership Property, naming the Receiver and Huntington as additional insureds, or as necessary to protect their interests.

f.   The receipt and endorsement of checks pertaining to the Receivership Property, either in the name of the Receiver or in the name of the Bucaroo Parties, as applicable.

g.    The payment of all real estate and personal property taxes, and any other taxes or assessments against the Receivership Property, during the period of the receivership.

h.    Taking such action, including pursuing insurance claims, and/or the filing of one or more lawsuits as the Receiver shall deem necessary and appropriate, in the Receiver's discretion, for the collection of any outstanding accounts receivable or other monies owed to The Bucaroo Parties.

i.    The investigation of any fraudulent or otherwise improper transfers or conveyances of the assets of The Bucaroo Parties as the Receiver shall deem necessary and appropriate, and, if necessary, the prosecution of any action to set such transaction(s) aside.

j.    Prevent the withdrawal or misapplication of funds.

k.    Issue such subpoenas as deemed necessary to allow the Receiver to fulfill the duties set forth in this Order.

l.    The maintenance, securing, management, operation, repair, preservation, leasing and marketing of the Receivership Property; and,

m.    The changing of locks to the Receivership Property and, if appropriate, limiting access to some or all of the Receivership Property; and,

n.    The assumption of full control over the Receivership Property, subject to the terms of this Order; and,

o.    The taking of possession and control of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's funds, subject to the terms of this Order, including tenant security deposits, and those (i) in all property operating accounts in the name of the Bucaroo Parties, or in any variation thereof, or in the name of its property manager; or, (ii) arising from the operation of the Property in the possession or control of any of the Bucaroo Parties; or, (iii) in any other Financial Institution accounts containing funds associated with the Property.  Should any of the Bucaroo Parties fail to turn over such funds to the Receiver promptly, all such

18

Financial Institutions at which such accounts are maintained are hereby ordered and directed to immediately turn over all funds in such accounts, together with all documents related to such accounts to the Receiver or to the Receiver's designated representative; and,

      p.    The preparation and maintenance of complete books, records, and financial reports of the Receivership Property, including, but not limited to, operating statements, income statements, balance statements and all other statements prepared for the Receivership Property, in a form acceptable to Huntington; and,

      q.    Permitting access to Huntington, its counsel, appraisers, environmental consultants, and other independent third-party consultants engaged by Huntington or its counsel to the Receivership Property at all reasonable times and upon reasonable notice to inspect the Receivership Property and all books and records, and cooperating with Huntington, its counsel, appraisers and other independent third-party consultants in the evaluation of the Property; and,

      r.    The retention, hiring or termination of management and other personnel, none of whom are or shall be deemed to be employees of Huntington, without any liability to the Receiver, and the power to hire, on a contract basis, any personnel deemed necessary by the Receiver for the maintenance, operation and preservation of the Receivership Property; and,

      s.    The establishment of pay rates for any on-site employees; and,

      t.    Subject to Approval, and consistent with the other provisions of this Order, the purchase of insurance, as the Receiver deems appropriate for the Receivership Property's preservation and protection; and,

      u.    The maintenance of one or more separate accounts with a federally insured banking institution or a savings association with offices in the State of Michigan, in the Receiver's name as receiver for Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality from which the Receiver shall disburse all authorized payments as provided in this Order; and,

      v.    The receipt and endorsement, as necessary, and the presentation for payment and/or the collection of any check, money order, credit

card account or other form of payment payable to Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality or Receiver constituting Income of the Receivership Property; and,

w    The payment of real estate taxes, personal property taxes, and other taxes or assessments against the Receivership Property; and,

x.    The operation of the Receivership Property under any existing name or trade name, or under any new name, in the sole discretion of the Receiver; and,

y.    The determination, and if necessary, the issuance of a report pertaining to the use of any Income or other Receivership Property previously received by Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality for purposes other than those set forth in the Huntington loan documents; and,

z.    The ability to access any post office boxes or other mail depository boxes, and the power to open and review mail directed to any of the Buccaroo Parties pertaining to the Receivership Property, and the power to present this Order to any person, entity or governmental agency as proof of the Receiver's authority pertaining to Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's mail, who shall abide by this Order; and,

aa.    The authority to seek the assistance of law enforcement officials, as necessary, to preserve the peace and to protect the Receivership Property; and,

bb.    Subject to Plaintiff's Approval, the engagement of a broker to assist in the expeditious and diligent marketing for sale or lease of all or any portion of the Property, and the authority to execute such leases and other documents required with respect to such leases; and,

cc.    The collection of any unpaid or delinquent rents and CAM charges regardless of whether the obligation(s) accrued before or after Receiver's appointment; and,

dd.    The execution, cancelation, modification, termination or rejection of any lease agreements or extensions of leases, subject to Plaintiff's Approval; it being understood that any and all claims arising from such cancelation, modification, termination or rejection shall be deemed "pre-

receivership claims", for which the Receiver shall not be responsible for payment without Approval; and,

ee.   The continued management, leasing and operation of the Property, and with Plaintiff's Approval, the power to enter into a listing agreement to market and sell all or any part of the Receivership Property; and,

ff.   The enforcement of any valid covenant of any existing lease; and,

gg.   The making of payments and other disbursements in the ordinary course of business, as may be necessary and proper for the management, operation, protection and preservation of the Receivership Property; and,

hh.   The maintenance of appropriate insurance, consistent with the terms of this Order; and,

ii.   The payment, in accordance with the loan documents and this Order, of all utilities, expenses and other obligations secured by, or which may give rise to liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including, with Approval, obligations incurred prior to the Effective Date, in the sole discretion of the Receiver, as may be necessary to maintain business relationships that are beneficial to the conduct of the Receivership; and, the making of repairs necessary for the maintenance of the Receivership Property, in order to preserve the Receivership Property in the ordinary course of business, provided, however, that no such improvements, repairs and/or remediations that are not included in the Approved Budget (defined below) having a cost of $10,000.00 or more shall be made without first obtaining Approval; and, the taking of all actions necessary to comply with all requirements, regulations and laws applicable to the Receivership Property, and to comply with all regulatory authorities in connection with the same; and,

jj.   In the sole discretion of the Receiver, the institution, prosecution, defense, compromise and/or intervention in such actions or proceedings in state or federal courts, which are necessary for the protection, maintenance and preservation of the Receivership Property, for the carrying out of the terms of any order of the Court affecting the Receivership Property, or the collection of rents and other amounts now or hereafter becoming due, or the removal of tenants or other persons or entities from the Receivership Property,

and/or the defense of any action brought against the Receiver acting in such capacity, and, with Approval, the retention of counsel in connection with the foregoing; and,

kk.    The issuance of subpoenas, as necessary  to obtain records pertaining to the Receivership Property and/or the Receivership, and for the taking of discovery as needed;

ll.    The taking of immediate possession and control of all of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's right, title and interest in and to all proceeds from any claims made or to be made under any of the insurance policies relating to the Property, as well as the right to act on behalf of the named insured under the policies, and to settle and compromise any such claims made or to be made with respect thereto; and,

mm.   The execution of any contracts or of any documents or instruments in the furtherance of the Receiver's duties and responsibilities in its own name or in the name of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, in the sole discretion of the Receiver as deemed appropriate.

Notwithstanding anything to the contrary contained in this Order, the Receiver shall not have the authority to file a petition for relief under the Bankruptcy Code for Buccaroo entities.

3.    **Access to Books and Records**.   The Receiver shall permit Huntington and its agents and counsel access to the Receivership Property at all reasonable times, to inspect the Receivership Property and the books and records of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality.

4.    **Employment of Third Parties**.   The Receiver is authorized, but not required to, all without recourse against the Receiver, to employ such

attorneys, accountants, appraisers, agents and others, as the Receiver may from time to time deem appropriate.

5.     **Borrowing of Funds.**  Subject to the approval of the Court, without affecting the rights of the parties relating to the underlying Note, the Receiver is authorized, but not required, to borrow funds from Huntington for approved purposes, if necessary, upon terms and conditions agreeable to Huntington and the Receiver.  Upon receipt of the approval of the Court, the Receiver shall be authorized to execute all promissory notes, loan agreements, Receiver's certificates, and amendments thereto, as shall be necessary to accomplish same.

6.     **Exercise of Powers Available Under Applicable Law.**  Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available under federal law or the laws of the State of Michigan, which may be incidental to the powers described in this Order, and to act on behalf of and in the name of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality in such manner as the Receiver shall deem appropriate.

7.     **Further Instructions.**  The Receiver shall have the right to apply to the Court for further instructions and authorization during the pendency of this action.

8.     **Protective Advances.**  All advances made to the Receiver by Huntington for the benefit of the Receivership Property, including any advances for working capital or improvements, and any other costs and expenses incurred by the Receiver under this Order shall be deemed protective advances under the Mortgages.  Any such protective advances shall be fully secured by Huntington's first priority mortgage lien and security interest in and upon the Receivership Property.  Any and all funds advanced by Huntington to the Receiver pursuant to this Order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed by Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality to Huntington; (c) be deemed to be secured by the Mortgages and the security interest in favor of Huntington under the loan documents, to the same extent and with the same priority as other indebtedness secured by all existing liens and security interests under the loan documents in favor of Huntington; and (d) accrue interest at the rate provided under the Note. All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property, except those for taxes and assessments which have first priority as a matter of law, and costs and expenses of the Receivership.

9.      **No Transfer of Title Transfer of Title.**  Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property.  Other than Income and other Receivership Property distributed to Huntington as provided in this Order, title to the Receivership Property shall remain in the name of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, unless foreclosed upon by Huntington or sold by the Receiver, in which case title to the Property will remain in the name of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality until the delivery of the Sheriff's Deed, Receiver's Deed or other instrument of conveyance.

10.      **Exercise of Powers.**  Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available and shall be subject to all the duties of a receiver under applicable laws that may be incidental to the management of the Receivership Property, as described in this Order.  The Receiver shall have any additional powers that are provided by law and that the Court may from time to time direct or confer.

11.      **Further Instructions.**  The Receiver shall, during the pendency of this action, have the right to apply to the Court for further instructions, directions, or authority necessary for carrying out its duties.

12.    **Self-Executing Authority.**  Unless specifically requiring Approval under the terms of this Order, the authority granted to the Receiver is self-executing.  The Receiver is authorized to, with respect to the Receivership Property, act on behalf of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, either in Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's name or in the Receiver's name, and to use Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's tax identification number(s), as the Receiver deems appropriate and in the Receiver's sole and absolute discretion without further order of this Court and without personal recourse against the Receiver (subject to the general provisions, below).

13.    **Sale of the Receivership Property.**  The Receiver is authorized to, on behalf and in the name of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, expeditiously and diligently sell the Receivership Property and the Collateral, with the approval of the Court, consistent with the provisions of 28 U.S.C. §2001(a), under the following conditions:

a.    The sale shall be for cash, unless otherwise authorized by the Court, for amounts subject to the approval of the Court.

b.    The sale, approved by the Court, shall be free and clear of all mortgage interests, security interests and other liens, as applicable, which shall be transferred to the net proceeds of sales.  No person or entity shall have any redemption rights with respect to any sale effectuated by the Receiver, and each

sale shall be final upon entry of an Order of the Court confirming same.

13.1   **Sale Authority.**  The Receiver shall have the following authority with respect to any sale of all or any portion of the Receivership Property:

a.     To do and perform all and every act desirable, proper or necessary, including without limitation, the authority to execute and deliver deeds of conveyance and all other documents necessary or desirable to effectuate the transfer of the subject Receivership Property all on behalf of and in the name of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality; and,

b.     To arrange a closing at the offices of a title company approved by Huntington, unless otherwise agreed by the Receiver and Huntington; and,

c.     Subject to Plaintiff's Approval, to approve and execute closing statements with respect to all such sales, verifying all closing costs, prorations, sales commissions, and any other adjustments to the purchase price.

14.   **Disbursement of Net Proceeds of Sale.**  The Net Proceeds of Sale of the Receivership Property shall be disbursed as follows:

a.     First, to the payment of any unpaid fees due the Receiver,  and to the reimbursement of out-of-pocket and other expenses incurred by the Receiver; and,

b.     Second, to Huntington, until the indebtedness secured by its Mortgages, Notes and Security Agreements have  been paid in full; and,

c.     Third, to the Clerk of the Court to be held pending further order of the Court.

15.   **No Waiver of Claims and Defenses.**   Nothing contained in this Order shall enlarge or restrict the claims and defenses of Huntington with respect to the Receivership Property.

16.   **Compensation of Receiver and Agents.**   The Receiver and all persons employed by and/or whose services are utilized by the Receiver, shall be compensated at their normal rates, with invoices to be issued and copies furnished to the parties to this action, through their respective counsel, on a monthly basis.  The Receiver's general office administration, accounting and overhead shall not be charged against the income generated by the Receivership Property.  The Receiver may receive payment on a monthly basis, without further Court order, in the amount of a flat fee of $500, plus a commission of 7.5% on any sales of the Real or Personal Property. The Receiver's counsel may receive payment on a monthly basis , without further Order of the Court , provided no objections are filed with the Receiver or the Receiver's counsel, as the case may be, within seven days after such invoices are mailed or electronically transmitted to the parties to this action, through their respective counsel.  In the event any objections are timely filed, the Receiver or any other party may file a motion with the Court to determine the propriety of the fees sought or of any objections.  The Receiver shall be reimbursed for any reasonable out of pocket expenses incurred during the

period of the receivership concerning the obligations and duties set forth in this Order.  The compensation paid to the Receiver and any professionals employed by the Receiver shall be paid first from the income generated from the Receivership Property and, next, by Huntington, but only to the extent that the income from the Receivership Property is insufficient to pay the Receiver and the compensation of the professionals employed by the Receiver.

17.     **Receiver's Reports.**  The Receiver shall furnish to the Court and to all parties, through their respective counsel, monthly reports and statements accounting for all receipts and disbursements.   The reports served upon counsel shall be submitted to the Court upon agreement of the parties or if a dispute arises for its review *in camera*, and shall not be filed with the Clerk of the Court.

18.     **Receiver's Bond.**  The Receiver shall post a surety bond in an amount of not less than $10,000.00.  The cost of the bond shall be an expense of the receivership, for which the Receiver shall be reimbursed in accordance with the terms of this Order.

19.     **Confidentiality.**  The parties to this action, their counsel and all those in active concert or participation with them, who receive actual notice of this Order, or otherwise, shall keep all Confidential Information provided by the Receiver confidential, and all such persons are prohibited from disclosing any

Confidential Information to anyone other than the parties to this action and their counsel without an order of the Court, except that Huntington and its attorneys and agents and the Receiver and its attorneys and agents may provide potential purchasers, consultants, or other appropriate persons with information useful for the marketing, leasing, selling or management of the Receivership Property, including the Receiver's Reports.

20.   **Prohibitions.**  The Buccaroo Parties and all others who may claim an interest in the Receivership  Property  or Collateral through Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality and who receive notice of this Order, and all those having claims against the Receivership Property, who receive notice of this Order, are enjoined from and shall not:

a.   **Commit Waste.**  Commit material physical waste on all or any part of the Receivership Property or Collateral  or commit any act on all or any part of the Receivership Property in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Receivership Property; and,

b.   **Collect Income.**  Demand, collect, receive, discount, or in any other way divert or use any of the Income, it being understood that any Income received in violation hereof shall be held in trust for the Receivership and immediately remitted to the Receiver; and,

c.   **Interfere with the Utilities.**   Terminate or withhold any electric, gas, water, sewer, telephone or other utility service supplying the Receivership property, require any utility deposit or otherwise interfere with the continue operations of the Receivership Property; and,

d.   **Interfere with Receiver.**  Interfere in any manner with the discharge of the Receiver's duties under this Order, or the possession, operation

and management of the Receivership Property or Collateral by the Receiver or any property manager employed by the Receiver; and,

   e. **Transfer or Encumber the Receivership Property**.  Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever, deal in or dispose of the whole or any part of the Receivership Property including, but not limited to, the Income  or Collateral without an Order of the Court; and,

   f. **Impair the Preservation of the Receivership Property**.  Take any action which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Receivership Property, including the Income, or Collateral or the preservation of Huntington's interest in the Receivership Property the Income and the Collateral.

  21. **Lawsuits against Receiver.**  No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an Order of the Court permitting the suit or action.  Notwithstanding the foregoing, nothing in this Order shall serve to stay or otherwise enjoin any pending action to enforce lien rights, including but not limited to the foreclosure of mortgages encumbering property owned by Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality.

  22. **Pre-Receivership Liabilities.**  Huntington, the Receiver and the Receiver's agents shall not be liable for any claim, obligation, liability, action, cause of action, cost or expense of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, its business operations, or the Receivership Property, or Collateral arising out of or relating to events or circumstances occurring prior

to the entry of this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties for the benefit or on the behalf of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, and any liability to which it is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Receivership Property or Collateral and operation of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality's business (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities").  Huntington, the Receiver, and the Receiver's agents shall not be obligated to advance any funds to pay any Pre-Receivership Liabilities. Notwithstanding the foregoing, with the prior written consent of Huntington (but not otherwise), the Receiver may fund Pre-Receivership Liabilities from funds collected from the operation of the Receivership Property.

23.   **Stay of Actions**.   Except by leave of this Court and except with respect to the right of Huntington to foreclose the Mortgage, or to otherwise take any enforcement action against the Receivership Property and the Collateral during the pendency of the receivership, any and all persons, creditors and entities are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, the Receiver, the

32

Receivership Property, the Collateral, or the Receiver's duly authorized agents

acting in their capacities as such, including but not limited to, the following

actions:

    a.    Commencing, prosecuting, litigating or enforcing suit, except that the actions may be filed to toll any applicable statute of limitations;

    b.    Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality that relates in any way to the Receivership Property, or attempting to foreclose, forfeit, alter or terminate the interests of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality in the Receivership Property, whether such acts are part of a judicial proceeding or otherwise;

    c.    Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Receivership Property; and,

    d.    Doing any act or thing to interfere with the Receiver taking control, possession or management of the Receivership Property or Collateral , or to in any way interfere with the Receiver or the duties of the Receiver or his agents; or to interfere with the exclusive jurisdiction of this Court over the Receivership Property or Collateral .

This paragraph does not stay the commencement or continuation of an action

or proceeding by a governmental unit to enforce such governmental unit's

police or regulatory power.

24.     **No Personal Liability of Receiver.**   The Receiver and the Receiver's employees, agents and attorneys shall have no personal liability in connection with any obligations, liens or amounts owed to Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality resulting from the performance of their duties pursuant to this Order, it being understood that the rights of each such creditor shall be determined in accordance with applicable law.

25.     **Breaches by Receiver.**   The Receiver and the Receiver's employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for those arising from intentional tortious acts, breaches of fiduciary duties, acts committed in bad faith, gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Order or any other Order of the Court.

26.     **Interference with Receiver's Duties.**   The parties to this action, those in active participation or concert with them who receive notice of this Order, and those having claims against the Receivership Property or Collateral who receive notice of this Order, are enjoined from interfering with the Receiver's actions in furtherance of performing the duties and carrying out the responsibilities outlined in this Order.

27.    **Receiver as Fiduciary**.  The Receiver shall faithfully discharge all of the duties outlined in this Order, and shall obey all other Orders of the Court. The Receiver shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Receivership Property and Collateral , and shall exercise the office accordingly.

28.    **Commercial Reasonableness**.  The Receiver's actions at all times shall be commercially reasonable, and the Receiver is subject to the personal jurisdiction of the Court.

29.    **Acceptance of Appointment as Receiver**.  The Receiver's duty to act in that capacity is subject to the written acceptance and approval of the terms of this Order.  Upon acceptance, the Receiver shall be bound by the terms of this Order, and all obligations imposed hereby.

30.    **Duration of Receivership**.  This receivership shall continue until the earlier of: (i) the sale of all Receivership Property and Collateral ; or, (ii) the further Order of the Court.

31.    **Discharge of Bond**.  The termination of the receivership will not discharge the Receiver or the Receiver's bond.

32.    **Resignation of Receiver**.  In the discretion of the Receiver, the Receiver may notify the Court and the parties that the receivership is no longer practical.  Upon such event, the Receiver's duties shall terminate thirty days

after filing the notice with the Court, followed by an Order of the Court terminating the receivership.

33.  **Removal of Receiver.**  The Receiver may be removed either: (i) thirty days after filing of a written demand for removal signed by Huntington's counsel, and filed with the Court; or, (ii) in the Court's equitable discretion, upon a motion for cause.  If the Receiver is removed, a successor receiver can be appointed by an order stipulated upon by the parties to this action.  If the parties to this action are unable to agree upon a successor receiver, one shall be appointed by the Court, after a motion is filed by any party to this action requesting the appointment of same.

34.  **Final Accounting.**  Within thirty (30) days after the termination of the receivership for any reason, the Receiver shall submit a final accounting for approval by the Court, with copies to be furnished to the parties to this action.

35.  **Court Approval of Final Accounting.**  Upon the Court's approval of the Receiver's final accounting, the Receiver shall be discharged, and the Receiver's bond canceled.

36.  **Tax Returns.**  The Receiver and the professionals employed by the Receiver shall not be responsible or required to, and shall not, prepare or file tax returns in connection with the Receivership Property or Buccaroo, Bucaroo

Too, Dino Drop and 45 Degree Hospitality, or otherwise wind down the business affairs of the Receivership Property or Collateral

37.   **Lien Enforcement and Foreclosure Rights.**  Nothing in this Order shall be construed to affect the rights of parties who have been granted mortgages or other liens upon property owned by Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality, including the right to commence or continue foreclosure proceedings, either judicially or by advertisement.  No further order of the Court is necessary for a mortgagee or lien claimant to commence a foreclosure, either judicially or by advertisement.

38.   **Amendment of Order.**  This Order may be amended for cause, either upon the stipulation of the Receiver and the parties, or for cause, after a motion and hearing.  No amendment to this Order shall affect the rights of persons or entities who are able to demonstrate that they relied upon the pre-existing terms of this Order to their detriment.

39.   **No Prejudice.**  This Order shall not prejudice the rights of any party to any claim, right or defense which they may have to Huntington's claims set forth in the Complaint.

40.   **Environmental Compliance.**  The Court finds that, Huntington, in seeking the appointment of the Receiver, is engaged in a "workout activity," as that term is defined in M.C.L. §324.20101a(3), and its actions in seeking the

appointment of a Receiver are intended to protect the value and marketability of the Receivership Property or Collateral , which is its collateral for repayment of the indebtedness described above.  The Court further finds that Huntington's actions taken in seeking the appointment of the Receiver do not constitute participation in management, as that term is defined in 42 U.S.C. §9601(a)(20).

41.    **Utilities.**  Any utility provider receiving notice of this Order shall establish and provide utility service to the Receivership Property, in the name of the Receiver.

42.    **No Assumption of Contracts.**  Notwithstanding anything to the contrary contained in this Order, the Receiver shall not be required to perform under, and may reject and otherwise terminate, any contract, document, lease, purchase order, statement of work or any other instrument entered into or accepted by Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality prior to the date of entry of this Order.  As such, the Receiver is not automatically bound by, nor deemed to assume, the contractual obligations of Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality prior to the appointment of the Receiver, and unless the Receiver has affirmatively elected to assume any such contract, document, lease, purchase order, statement of work or any other instrument entered into or accepted by Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality prior to the date of entry of this Order, the Receiver shall

not be bound by or deemed to have assumed same, nor shall the Receiver or the receivership estate have any liability or obligation under or with respect to same, and the decision to affirmatively elect to assume any such contract, document, lease, purchase order, statement of work or any other instrument, is within the Receiver's sole discretion.

43. **Taxes and Utilities.**

43.1 **Pre-Receivership Taxes and Utilities.** Neither the Receiver nor the Receivership estate shall be liable for the payment of taxes of any kind, or for assessments, goods or services provided to Buccaroo, Bucaroo Too, Dino Drop and 45 Degree Hospitality or the Receivership Property or for unpaid utility charges incurred prior to the Effective Date. All parties receiving a copy of this Order are hereby enjoined and restrained from discontinuing service to the Receiver or to the Receivership Property based upon the non-payment of such taxes, assessments, goods or services or utilities prior to the Effective Date, and from attempting to collect taxes, assessments, invoices and utility charges from the Receiver which were incurred prior to the Effective Date. Each provider of utility services to the Property shall forthwith transfer any deposits which it holds to the exclusive control of the Receiver and shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such service.

44.     **<u>Right to Foreclose</u>.** This Order shall not prejudice Huntington's foreclosure of the Mortgage, or any action by Huntington under any security agreement or the Uniform Commercial Code with respect to the Receivership Property or Collateral , or any of Huntington's other claims as set forth in the Complaint or in any amendments thereto.

45      **<u>Final Order</u>.** The Court finds there is no just reason for delay and therefore enters this Order as a final order.

Dated: July 7, 2022

s/Gershwin A. Drain_____
United States District Judge

Approved as to form:

Plunkett Cooney

By: /s/David A. Lerner
David A. Lerner (P44829)
Attorneys for Plaintiff

**ACCEPTANCE OF RECEIVERSHIP**

The duties of the Receiver, as set forth in the foregoing Order, are accepted and agreed to.

M. Shapiro Management Company LLC

By: _____

Printed name: _____

Its: _____

**Drafted by and when recorded, return to:**
David A. Lerner
Plunkett Cooney
38505 Woodward Avenue
Suite 100
Bloomfield Hills, MI 48304

# EXHIBIT A

**Property Address:** 4029 & 4055 Old US Highway 27, Gaylord, MI 49735

**Legal Description:**

Situated in the Township of Bagley, County of Otsego, State of Michigan, to wit: Parcel 1:

Commencing at the North 1/4 corner of Section 28; thence North 89 degree 31 minutes 29 seconds West 1024.65 feet along the North line of said Section to the Point of Beginning; thence South 02 degree 16 minutes 35 seconds East 199.99 feet; thence North 89 degree 33 minutes 09 seconds West 238.28 feet to the Easterly Right-of-Way of Highway Old US 27; thence North 03 degree 32 minutes 01 seconds East 200.05 feet along said Right-of-Way to the North line of said Section; thence South 89 degree 32 minutes 49 seconds East 218.00 feet along said section line to the Point of Beginning. Part of the Northeast 1/4 of the Northwest 1/4 of Section 28, Township 30 North, Range 3 West.

Also:

Parcel 2:

Commencing at the North 1/4 corner of Section 28; thence North 89 degree 31 minutes 29 seconds West 1242.63 feet along the North line of said Section; thence South 03 degree 32 minutes 01 seconds West 200.07 feet along the Easterly line of Highway Old 27 to the Point of Beginning; thence South 89 degree 33 minutes 09 seconds East 238.28 feet; thence South 02 degree 16 minutes 35 seconds East 129.95 feet; thence North 89 degree 31 minutes 41 seconds West 251.44 feet to said Easterly Right-of-Way line; thence North 03 degree 32 minutes 01 seconds East 129.89 feet along said Right-of-Way line to the Point of Beginning Part of the Northeast 1/4 of the Northwest 1/4 of Section 28. Township 30 North, Range 3 West.

Tax ID # 010-028-200-020-01, 010-028-200-020-02

EXHIBIT A
(continued)


Land situated in the City of Ferndale, County of Oakland, State of Michigan, described as follows:

Lot(s) 17 of Woodward Heights Subdivision, according to the plat thereof recorded in Liber 10 of Plats, Page 3 of Oakland County Records.

Tax Parcel Number:  25-27-381-025
More commonly known as:  177 Vester Street, Ferndale, Michigan 48220


Open.01491.02564.29128394-1