# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK,
A national banking association,

        Plaintiff,

v.

BUCCAROO LLC, a Michigan limited liability company, BUCAROO TOO LLC, a Michigan limited liability company, DINO DROP, INC., a Michigan corporation, 45 DEGREE HOSPITALITY, INC., a Michigan corporation, WILLIAM ROBERT DUKE TAYLOR, and DEAN BACH, jointly and severally,

        Defendants.

_____/

Civil Action No. 2:22-cv-11290

Hon. Gershwin A. Drain

| | |
|---|---|
| David A. Lerner (P44829)<br>**PLUNKETT COONEY**<br>*Attorney for Plaintiff*<br>38505 Woodward Avenue<br>Suite 100<br>Bloomfield Hills, MI 48304<br>(248) 901-4010<br>dlerner@plunkettcooney.com | Sara K. MacWilliams (P67805)<br>Paige Serra (P84568)<br>**MACWILLIAMS LAW PC**<br>*Attorneys for William Robert Duke Taylor*<br>838 West Long Lake Road<br>Suite 211<br>Bloomfield Hills, MI 48302<br>(248) 432-1586<br>sm@macwilliamslaw.com<br>paige@macwilliamslaw.com |
| Scott Norton (P35717)<br>**Scott Norton Law** | Frances B. Wilson (P<br>**Dawda, Mann, Mulcahy & Sadler, PLC** |

| | |
|---|---|
| *Attorney for Dean Bach*<br>898 N. Adams Road<br>Suite 2<br>Birmingham, MI 48304<br>scott@scottnortonlaw.com | *Attorney for M. Shapiro Management Company LLC, Court Appointed Receiver*<br>39533 Woodward Avenue<br>Suite 200<br>Bloomfield Hills, MI 48304<br>fwilson@dmms.com |

_____/

## **DEFENDANT TAYLOR'S REPLY BRIEF IN SUPPORT OF MOTION REGARDING PAYMENT OF FEES INCURRED FOR BENEFIT OF RECEIVERSHIP ESTATE**

# Table of Contents

**STATEMENT OF ISSUES PRESENTED** ................................................................................ iv

**I. INTRODUCTION**………………………………………………………………………..1

**II. ANALYSIS** …………………………………………………………………………...1

**III. CONCLUSION** ……………………………………………………………………..6

# STATEMENT OF ISSUES PRESENTED

**ISSUE #1:**

Whether the Court should require the Receiver to permit payment of outstanding fees incurred on behalf of the companies in receivership with the Plaintiff's permission and approval?

**ANSWER:**

Defendant Duke Taylor and counsel: **YES**

Receiver's position: **NO**

## I. INTRODUCTION

Defendant William Robert Duke Taylor, ("Taylor") through the undersigned counsel, is using this Reply in Support of his Motion for Attorney Fees to address the Responses from both the Receiver (Dkt. 18) and Huntington National Bank ("Huntington") (Dkt. 19). Each Response relies on the arguments that the undersigned counsel's request for attorney fees is in direct contravention of the Order Appointing the Receiver ("OAR"), is not supported by the consent of Huntington, and is not supported by the July 16, 2021 Settlement Agreement between Taylor and Defendant Dean Bach ("Bach"). The Responses by the Receiver and Huntington use the law to argue a windfall in the Receiver and Bank's favor and do not comport with the principles of equity. Taylor's Motion for Attorney Fees should be granted in its entirety.

## II. ANALYSIS

### a. Receiver M. Shapiro Management Company, LLC's Response

By the Receiver's own admission in their Response, they state that in the OAR "the Receiver may fund Pre-Receivership Liabilities from funds collected from the operation of the Receivership Property." (Dkt. 18 at p. 2). Further detailed in footnote 1, the Receivership Property includes "All income," wherein "income" is defined to include funds from IOLTA accounts.

1

The Receiver contends that at their discretion, and only with Huntington's written consent, may the Receiver pay any pre-receivership liabilities. Huntington already agreed in writing, prior to the stipulation to a receiver, that it would honor the payment of certain outstanding attorney fees to MacWilliams Law PC. (Dkt. 14, Exhibit 3 thereto)

The Receiver also claims that "the funds being held by MacWilliams Law are critical to the Receivership paying other legitimate expenses of the Receivership Estate." (Dkt. 18 at p. 4) However, without the work performed by Ms. Serra on behalf of the Entity Defendants there would be no estate or funds that the Receiver could claim access to. Bach let all of the properties fall into disarray and refused to participate in their rehabilitation. MacWilliams Law spent a significant amount of time, time away from other legal matters, engaging in settlements, paying invoices, and getting the properties running so that they may be sold at a higher amount than if they were simply nonoperational buildings. Without the work performed by Taylor and MacWilliams Law, none of the properties would be sold, there would be hundreds of thousands of dollars of unpaid bills and invoices, and the buildings would have been left to rot. Bach failed to properly run the businesses and Taylor, with MacWilliams Law's assistance, attempted to preserve the assets to the best of their ability which now make up the entire Receivership Estate.

The Receiver also claims that the July 16, 2021 Settlement Agreement relied upon by MacWilliams Law does not provide that MacWilliams Law was to act as a receiver, either formally or informally, and that legitimate expenses were not paid current through July 7, 2022. (Dkt. 18 at p. 8) The Receiver further explains that the "Receivership Estate currently has no funds to pay the legitimate expenses of the receivership." (Id.) The Receiver is currently in the same financial and legal position it would be if MacWilliams Law did not do everything in its power to maintain the properties and pay the debt obligations it did. The Receiver would not be able to pay the same legitimate expenses it is currently claiming it cannot pay and there would be no properties to sell to try and repay the mortgages owed to Huntington. Had MacWilliams Law done nothing then there would be no Receivership Estate at all. While the Settlement Agreement does not expressly state that MacWilliams Law and Taylor would act as an informal receiver for the properties, it was understood between the parties that MacWilliams Law would pay bills and invoices, maintain the properties, list the properties, sell the properties, and clear up any liens, mortgages or otherwise, as a part of the "management" process.

If the IOLTA funds are turned over to the Receiver without covering the fees MacWilliams Law incurred to make sure that a Receivership Estate existed, then the Receiver will be unjustly enriched at MacWilliams Law's sole expense, leading to further litigation. Additionally, if there were or are any outstanding legitimate

expenses that MacWilliams Law did not pay, as the Receiver suggests, that is due solely to the actions of Defendant Bach and his rotating legal counsel. Time and again Ms. Serra and Ms. MacWilliams informed Bach's legal counsel that should Bach receive **any** notices, invoices, premiums, demands for payment, anything relating to the shared businesses he or his attorneys should send that information to MacWilliams Law so that it could be properly paid. Bach and his counsel repeatedly failed to this.

    **b. Huntington National Bank's Response**

There are several glaring inaccuracies in Huntington's Response that need to be addressed:

1. Paragraph 3 of the Response chronologically happens prior to the events complained of in Paragraph 2 despite being listed after and giving the impression that Huntington issued its demand for payment prior to the lawsuit. Taylor sued Bach based on Bach's repeated breach of his fiduciary duties.

2. Paragraph 3 also complains that Huntington should have been made a party to that underlying lawsuit. This logically makes zero sense given that there was no demand for payment issued at that time and Taylor would not have had any legal grounds to sue Huntington for anything.

3. The end of Paragraph 6 falsely claims that MacWilliams Law billed for legal services performed in litigation against Bach and the Entity Defendants under the guise that they were performed "acting as a receiver." (See also Dkt. 19 Exhibit B thereto) This is not true. All of the items invoiced in Exhibit B were for work performed on behalf of the Entity Defendants for their preservation and eventual sale. None of the items listed were for work performed for Taylor or on his behalf in litigation against the Entity Defendants or Bach.

4. Paragraph 7 addresses the emails exchanged between Huntington's counsel, David Lerner, and Sara MacWilliams. The main point of contention is that Huntington is claiming they did not provide MacWilliams Law with $10,500 at the closing table because the sale did not close and they did not receiver their $739,000. The sale did not close because Bach refused to sign the closing documents, after assuring everyone involved in the transaction that he would

5. Paragraph 8 states that Bach consented to the appointment of the Receiver in his capacity as member and shareholder of the Entity Defendants. Per the Settlement Agreement and the Order Enforcing the Settlement Agreement, Bach does not have any interest in the Entity Defendants and does not have the authority to consent on behalf of the Entity Defendants. This was pointed out to the Receiver's counsel when Mr. Norton filed his appearance on behalf of the Entity Defendants.

6. Paragraph 9 does not provide a date relating to Huntington's alleged advancement of $1,981.00 to "protect the liquor licenses from being revoked." Ms. Serra has been in constant communication with the underwriter, Mr. Chuck Senkyr, regarding the license insurance and has kept the insurance up to date.

7. Further in Paragraph 9, Huntington complains that the real property and personal property taxes on the property on Vester and the property in Gaylord are unpaid. All taxes related to the Vester property have been paid and were up to date as of the date of the OAR. Any taxes after that were no longer MacWilliams Law's responsibility to pay. As for the Gaylord taxes, MacWilliams Law had been asking counsel for Bach for over a year and a half for all invoices, bills, accounts, finances, and anything else relating to that property. Bach failed to provide this information to Taylor or MacWilliams Law and Bach is the reason these remain unpaid.

8. Paragraph 19 improperly reduces MacWilliams Law's hours and hours of work down to mere bill paying, which Huntington claims were only made through March 1, 2022. Bills and other such items were all paid through June 16, 2022, and the work that was performed to accomplish everything included in the invoices attached to Huntington Response to hours of work and communication to accomplish, accomplished at a significantly lower rate than what a receiver, let alone this Receiver, would charge.

Huntington cannot pick and choose when it wants to be active in proceedings. Huntington has had knowledge since issuing the mortgages to the Defendants when all liabilities would be coming due. Huntington's choice to wait until the last possible moment to investigate into the lawsuit between Taylor and Bach and then subsequently file this lawsuit over a year after its Demand for Payment demonstrates how little Huntington wants to be involved in these proceedings.

### III. CONCLUSION

For the reasons set forth herein, and in his initial Motion and Brief, Taylor and the undersigned attorneys respectfully request that the Court permit the application of funds held in the MacWilliams Law PC and Howard Law Firm PLC trust accounts to the receivership companies' outstanding invoices.


Respectfully submitted,

/s/ Paige Serra
MacWilliams Law PC
838 W. Long Lake Road, Suite 211 Bloomfield Hills, MI 48302
(248) 432-1586
Dated: September 7, 2022        paige@macwilliamslaw.com

**PROOF OF SERVICE**

I certify that I filed the foregoing on today's date in the Court's ECF system and the same will be served on all counsel of record.

Respectfully submitted,

/s/ Paige Serra
MacWilliams Law PC
838 W. Long Lake Road, Suite 211
Bloomfield Hills, MI 48302
(248) 432-1586

Dated: September 7, 2022             paige@macwilliamslaw.com