UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL
BANK, a national banking association,

        Plaintiff(s),

                                Case No. 22-11290

vs.

                                HON. GERSHWIN A. DRAIN

BUCCAROO LLC, a Michigan Limited
Liability Company, *et al.*,

        Defendant(s).

**ORDER GRANTING RECEIVER'S MOTION FOR ORDER (1) AUTHORIZING RECEIVER TO SELL RECEIVERSHIP PROPERTY VIA AUCTION AND APPROVING AND CONFIRMING THE PURCHASE AGREEMENT, (2) APPROVING AND CONFIRMING SALE OF PROPERTY FREE AND CLEAR OF ANY AND ALL LIENS, MORTGAGES, CLAIMS, SECURITY INTEREST AND OTHER ENCUMBRANCES OF ANY KIND OR TYPE, AND TRANSFERRING THEM TO THE NET PROCEEDS OF SALE, AND (3) GRANTING RELATED RELIEF [#82]**

## I. INTRODUCTION

On June 10, 2022, the Huntington National Bank filed the instant

action after Defendants Dean Bach, William Robert Duke Taylor and

their business entities defaulted on several loans totaling

$1,525,000.00.  On July 7, 2022, the parties stipulated to the

appointment of a receiver, M. Shapiro Management Company, LLC.

Presently before the Court is the Receiver's Motion for Order (1) Authorizing Receiver to Sell Receivership Property Via Auction and Approving and Confirming the Purchase Agreement, (2) Approving and Confirming the Sale of Property Free and Clear of any and all Liens, Mortgages, Claims, Security Interest and Other Encumbrances of any Kind or Type, and Transferring Them to the Net Proceeds of Sale, and (3) Grant Related Relief.   Specifically, the Receiver requests court approval and confirmation of the marketing and sales procedures for the Gaylord Property via Auction, and approval and confirmation of the sale of the Gaylord Property under the terms of the Purchase Agreement.

## II.    FACTUAL BACKGROUND

On July 7, 2022, the Court entered a Stipulation and Order Appointing Receiver appointing M. Shapiro Management Company, LLC, by its authorized agent, Mark S. Kassab (the "Receiver"), as the Receiver over the Receivership Property (hereinafter referred to as the "OAR"), which includes certain real property located in the Township of Bagley, County of Otsego, State of Michigan.  The Property is described

as follows:

Parcel 1:
Commencing at the North 1/4 corner of Section 28; thence North
89 degree 31 minutes 29 seconds West 1024.65 feet along the
North line of said Section to the Point of Beginning; thence South
02 degree 16 minutes 35 seconds East 199.99 feet; thence North
89 degree 33 minutes 09 seconds West 238.28 feet to the Easterly
Right-of-Way of Highway Old US 27; thence North 03 degree 32
minutes 01 seconds East 200.05 feet along said Right-of-Way to
the North line of said Section; thence South 89 degree 32 minutes
49 seconds East 218.00 feet along said section line to the Point of
Beginning. Part of the Northeast 1/4 of the Northwest 1/4 of
Section 28, Township 30 North, Range 3 West.

Commonly known as: 4029 Old US Highway 27, Gaylord, MI
49735
Tax ID # 010-028-200-020-01
(hereinafter "Parcel 1")

Also:

Parcel 2:
Commencing at the North 1/4 corner of Section 28; thence North
89 degree 31 minutes 29 seconds West 1242.63 feet along the
North line of said Section; thence South 03 degree 32 minutes 01
seconds West 200.07 feet along the Easterly line of Highway Old
27 to the Point of Beginning; thence South 89 degree 33 minutes
09 seconds East 238.28 feet; thence South 02 degree 16 minutes
35 seconds East 129.95 feet; thence North 89 degree 31 minutes
41 seconds West 251.44 feet to said Easterly Right-of-Way line;
thence North 03 degree 32 minutes 01 seconds East 129.89 feet
along said Right-of-Way line to the Point of Beginning Part of the
Northeast 1/4 of the Northwest 1/4 of Section 28. Township 30
North, Range 3 West.

Commonly known as: 4055 Old US Highway 27, Gaylord, MI
49735

Tax ID #010-028-200-020-02
(hereinafter "Parcel 2")

Parcel 1 and Parcel 2 are collectively referred to as the "Gaylord Real Property." Defendant Buccaroo Too, LLC is the owner of the Gaylord Real Property. Located on Parcel 1 is a restaurant, which was operated by Defendant 45 Degrees Hospitality, Inc. An outdoor pavilion is located on Parcel 2, but Parcel 2 is not improved with any lavatories, kitchen, or water source. Moreover, the water well located on Parcel 2 is also utilized by Parcel 1.

The Receivership Property also includes the collateral, which is all of the personal property of every kind wherever located of Defendant 45 Degree Hospitality, Inc. including, but not limited to, liquor licenses. Defendant 45 Degree Hospitality, Inc. is the owner of the (a) Retail–On Premises, Class C, DDA License No. L-000400221 (together will all permits, including additional bar, Sunday sales – am, Sunday sales – pm, catering and outdoor service area), and (b) Retail –Off Premises, SDM License No. L-000400222 (collectively, the "Gaylord Liquor License"). The Gaylord Real Property, the Gaylord Liquor License, and any other personal property located at the Gaylord Real Property is hereinafter referred to collectively as the "Gaylord Property."

4

The Receiver began marketing the Gaylord Property on September 19, 2022 on Loopnet, Costar, Realcomp mls, Crexi and the local MLS (Winter Wonderland) and has installed a marketing sign along the front of the real property. The Receiver has been in contact with interested purchasers and has showed the Gaylord Property. No offer has been received.

On or about September 27, 2021, prior to the appointment of the Receiver, Defendant Buccaroo Too, the owner of the Gaylord Real Property, and Defendant Taylor's real estate agent, Jodi Tippins, tried to sell part of the Gaylord Property and purportedly entered into a purchase agreement to sell Parcel 2 to purchaser Donald Bleuenstein for $150,000.00 and free and clear of all liens. The sale never closed.

Thereafter, Mr. Bleuenstein instituted a lawsuit against Defendant Buccaroo Too seeking specific performance of the purchase agreement, repayment of attorney fees, and other causes of action in the Otsego County Circuit Court, Case No. 21-18741-CK, assigned to the Hon. Judge George J. Mertz. The lawsuit has been resolved and Mr. Bleuenstein has agreed to dismiss his claims therein and record a discharge of the Lis Pendens on the Gaylord Real Property.

After analyzing the current listing price, (ii) anticipated time for closing, (iii) the limited restaurant season in Gaylord, Michigan, and (iv) continued carrying costs (i.e., insurance, taxes, maintenance), together with deteriorating hard asset value of the real and personal property, the Receiver has determined in its reasonable business judgment, that the sale of the Gaylord Property via online auction with the terms in the unsigned Purchase Agreement will result in the highest and best offer for the Gaylord Property. Plaintiff Bank has approved the sale of the Gaylord Property via online auction.

Additionally, the terms of the proposed Purchase Agreement require Receiver to pay:

a.   All delinquent real property taxes, installments, assessments, and other charges which are a lien against the Gaylord Real Property as of the Closing, as set forth in paragraph 9 of the Purchase Agreement.

b.   Any personal property taxes of Seller, if any, will be prorated on the same basis as any real property taxes.

c.   Seller will pay any state and county transfer taxes at Closing.

d.   Seller to pay water / sewer bill to the date of Closing, or establish an appropriate escrow to pay the final bill.

e.   All other rents, costs and similar items shall be treated and/or pro-rated in accordance with local custom.

6

The Purchase Agreement also states that:

a.    The sale shall be for cash, unless otherwise ordered by the
      Court, for amounts subject to the approval of the Court.

b.    The sales approved by the court shall be free and clear of all
      mortgage interests, security interest and other liens, as
      applicable, which shall be transferred to the Net Proceeds of
      the Sale. No person or entity shall have any redemption
      rights with respect to the sale, and each sale shall be final
      upon entry of an order confirming the same.

Additionally, the OAR requires that the sale of the Gaylord

Property "be free and clear of all mortgage interests, security interest

and other liens, as applicable, which shall be transferred to the net

proceeds of the sales."  Further, no person or entity shall have any right

of redemption.

The Gaylord Property is subject to certain liens, mortgages,

claims, security interests and other encumbrances (collectively, referred

to as "Liens"), in the following rank and priority:

a.    Gaylord Real Property:

1.    Plaintiff Bank pursuant to a (i) Mortgage in the
      original amount of $925,160.00 executed by Defendant
      Buccaroo Too, LLC, a Michigan Limited Liability
      Company to The Huntington National Bank, dated
      June 27, 2018, recorded July 10, 2018, in Liber 1464,
      page 75; and (ii) a Mortgage in the original amount of
      $1,036,000.00 executed by Defendant Buccaroo Too,

LLC, a Michigan Limited Liability Company to The Huntington National Bank, dated February 8, 2019, recorded February 14, 2019, in Liber 1485, page 784.

2.     A Construction Lien in the amount of $66,856.00 against Buccaroo Too, LLC, executed by B & B Construction Inc., dated October 22, 2019, recorded October 22, 2019, in Liber 1506, page 785.

3.     Notice of Lis Pendens dated November 3, 2021, recorded November 4, 2021, in Liber 1583, page 440, Donald F. Bleuenstein, Plaintiff, vs. Buccaroo Too, LLC, Defendant, Case No. 21-018741-CK, Otsego County Circuit Court, and all judgments, orders, claims, right to claims and any other matter arising from the proceedings, as to Parcel 2.  Pursuant to an agreement with Mr. Bleuenstein, a discharge of the Lis Pendens will be executed and recorded.

b.     Gaylord Liquor Licenses and other personalty:

i.     First, Plaintiff Huntington National Bank

ii.     Second, Corporation Service Company, as representative, P.O. Box 2576, Springfield, IL, 62708

iii.     Third, United States Small Business Administration, 2 North Street, Birmingham, Alabama, 35203

Upon information and belief, as of February 18, 2024,

Plaintiff Bank is owed a balance from Defendants under the Loan

Documents, which such indebtedness is secured by the

Receivership Property, including without limit, the Gaylord

Property, in at least the following amounts:

Principal: $636,578.18

Interest:  $172,753.93

Return Check: $15.00

Insurance:  $25,122.08

Late Fees: $4,182.98

TOTAL: $838,652.17

Any funds necessary to pay the Liens will be generated by the Net Proceeds of Sale from the Gaylord Property.

The OAR at ¶ 14 provides that Net Proceeds of Sale of Receivership Property, including without limit, the sale of the Gaylord Property, shall be disbursed as follows:

a.    First, to the payment of any unpaid fees due Receiver, and the reimbursement of out-of-pocket and other expenses incurred by the Receiver; and,

b.    Second, to Plaintiff Huntington, until the indebtedness secured by its Mortgages, Notes, and Security Agreements have been paid in full; and,

c.    Third, to the Clerk of the Court to be held pending further

order of the Court.

The Receiver, through the Auctioneer, is ready to promptly conduct the online Auction of the Gaylord Property, and enter into the Purchase Agreement with the Buyer, subject to the approval and confirmation of the sale by this Court.  Receiver has provided notice of this Motion and the proposed Auction procedures and the sale of the Gaylord Property under the Purchase Agreement to the following parties who may claim an interest in the Gaylord Property or are otherwise interested parties:

a.   All parties to this case (via the ECF system)

b.   Mr. Donald F. Bleuenstein
c/o Mark L. McAlpine, Esq.
Lynette McAlpine, Esq.
3201 University Dr Ste 200
Auburn Hills, MI  48326-2395
mlmcalpine@mcalpinelawfirm.com
ltmcalpine@mcalpinelawfirm.com
via email and certified mail

c.   Corporation Service Company, as representative Filer Ref:
[166776524]
P.O. Box 2576
Springfield, IL 62708
filingdept@cscinfo.com
uccsprep@cscinfo.com
via email and certified mail

d.   B & B Construction Inc., c/o Reg. Agent, William J.

Raymond, 4572 Pinehurst Ave.
Gaylord, MI 49735
via regular mail and certified mail

e.   United States Small Business Administration (per
Fed.R.Civ.P. 4(i)(2))
Attn:  District Counsel
515 Patrick V. McNamara Building 477 Michigan Avenue
Detroit, MI 48226-2573
via certified mail

AND

United States Attorney's Office Attn: Civil-Process Clerk
Eastern District of Michigan 211 W. Fort Street, Suite 2001
Detroit, MI 48226
via certified mail

AND

U.S. Small Business Administration 2 North Street, Suite
320 Birmingham, AL 35203

f.   Jodi Tippins (via regular mail and email)
3380 Heron Pointe Ct. Waterford Twp., MI 48328
jt@tippinsluxerealty.com via email and certified mail

AND

Skylar Adventures Corp (via mail)
d/b/a Tippinsluxe Realty
c/o Reg. Agent, Jodi Barnett P.O. Box 1424
Birmingham, MI 48012

## III.   LAW & ANALYSIS

Federal Rule of Civil Procedure 66 governs the appointment of

receivers in federal court. That rule provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." FED. R. CIV. P. 66. "The role of a receiver is to safeguard disputed assets, to suitably administer the receivership property, and to assist the court in achieving a final, equitable distribution of the assets." *Liberte Capital Group, LLC v. Capwill*, 248 Fed. App'x 650, 655 (6th Cir. 2007). Generally, a receiver's powers extend to the limits of the order appointing the receiver. *Liberte Capital Group, LLC v. Capwill*, 421 F.3d 543, 551 (6th Cir. 2006).

The public sale of real property or any interest thereunder by a Receiver is governed by 28 U.S.C. §§ 2001 and 2004, such as specifically referenced in the OAR at ¶ 13, which provides:

> (a) Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.
>
> Property in the possession of a receiver or receivers appointed by one or more district courts shall be sold at

public sale in the district wherein any such receiver was
first appointed, at the courthouse of the county, parish, or
city situated therein in which the greater part of the
property in such district is located, or on the premises or
some parcel thereof located in such county, parish, or
city, as such court directs, unless the court orders the
sale of the property or one or more parcels thereof in one
or more ancillary districts.

The Receiver also has authority to sell the Gaylord Property under

the OAR. Specifically, under the terms of the OAR, the Receiver is

vested with and will discharge certain duties, including, in relevant

part:

***

l. The maintenance, securing, management, operation, repair,
leasing and **marketing of the Receivership Property**; and

***

bb. Subject to Plaintiff's Approval, the engagement of a broker to
assist in the **expeditious and diligent marketing for sale** or
lease of all or any portion of the Property, and the authority to
execute such leases and other documents required to respect to
such leases; and

***

ee. The continued management, leasing, and operation of the
Property, and **with Plaintiff's Approval, the power to
enter into a listing agreement to market and sell all or
any part of the Receivership Property**. [Emphasis
supplied.]

*See* Receiver's Mot., Ex. 2 at pp. 17-22. Subject to Court approval, the

Receiver is expressly authorized to "expeditiously and diligently" sell

the Receivership Property (including without limit, the Gaylord

13

Property) under Paragraph 13 and Paragraph 13.1 of the OAR, which

provide:

13. Sale of Receivership Property. The Receiver is authorized to, on behalf of and in the name of Buccaroo, Buccaroo Too, Dino Drop and 45 Degree Hospitality, expeditiously and diligently sell the Receivership Property and the Collateral, with the approval of the Court, consistent with the provisions of 28 U.S.C. § 2001(a), under the following conditions:

a. The sale shall be for cash, unless otherwise authorized by the Court, for amounts subject to the approval of the Court.

b. The sale, approved by the Court, shall be free and clear of all mortgage interests, security interest and other liens, as applicable, which shall be transferred to the net proceeds of the sales. No person or entity shall have any redemption rights with respect to any sale effectuate by the Receiver, and each sale shall be final upon the entry of an Order of the Court confirming same.

13.1 Sale Authority. The Receiver shall have the following authority with respect to any sale of all or any portion of the Receivership Property:

a. To do and perform all and every act desirable, proper or necessary, including without limitation, the authority to execute and deliver deeds of conveyance and all other documents necessary or desirable to effectuate the transfer of the subjection Receivership Property all on behalf of and in the name of Buccaroo, Buccaroo Too, Dino Drop and 45 Degree Hospitality; and,

      b.  To arrange a closing at the offices of a title company approved by Huntington, unless otherwise agreed by the Receiver and Huntington; and,

      c.  Subject to Plaintiff's Approval, to approve and execute closing statements with respect to all such sales, verifying all closing costs, prorations, sales commissions, and any other adjustments to the purchase price.

*See* Receiver's Mot., Ex. 2 at pp. 26-27.

The OAR also permits the Receiver to employ such agents as the Receiver may from time to time deem appropriate. *See* Exhibit 2, at ¶ 4. This authority includes the right to employ a real estate broker such as M. Shapiro and Company, Inc., and an auctioneer such as R.J. Montgomery & Assoc., Inc. Receiver has received an auction proposal from R.J. Montgomery & Assoc., Inc. d/b/a RJM Auctions ("Auctioneer") for the Auctioneer to conduct an online auction of the Gaylord Property, with the following material compensation terms to Auctioneer:

    a.    Auctioneer to be reimbursed for marketing expenses in the amount of $4,500.
    b.    Auctioneer to be paid a flat fee for all labor relating to marketing in the amount of $3,000.
    c.    Auctioneer will charge the successful bidder a 10% buyer's premium, of which Auctioneer will retain 6.0% and return 4.0% to the Receivership Estate.

d.     The Receiver agrees to pay the marketing expenses and labor costs, as set forth above, totaling $7,500 regardless of whether the Reserve Price (as defined below) is not met.

The terms, conditions and the process of the online auction of the

Gaylord Property to be conducted by the Auctioneer include:

a.     Receiver will set a minimum sale price (the "Reserve Price") for the Gaylord Property. Said Reserve Price has been approved by Plaintiff Bank in writing.

b.     Open houses (at least three) for the Gaylord Property will be held by the Receiver and/or Auctioneer in advance of the Auction.

c.     The successful bidder at Auction shall immediately enter into a purchase agreement, in a form substantially similar to that attached as Exhibit 7, which terms are incorporated herein (the "Purchase Agreement"). Receiver is authorized and permitted to modify or amend the Purchase Agreement prior to closing but only if the purchase price is not reduced, except as otherwise provided in this Motion.

d.     The purchase price of the Gaylord Property will be allocated as follows:

1. Personal Property: $5,000
2. Liquor License: $25,000 (if the Liquor License transfer is approved by the MLCC)
3. Liquor License: $0 (if the Liquor License transfer is not approved by the MLCC)
4. Alcohol Inventory: $100 (if the Liquor License transfer is approved by the MLCC)
5. Alcohol Inventory: $0 (if the Liquor License transfer is not approved by the MLCC)
6. Real Property: The Purchase Price less any amount(s) (if any) allocated to the Personal Property, Liquor License or Alcohol Inventory

e.  Concurrent with the execution of the Purchase

16

Agreement, the successful bidder (the "Buyer") shall deposit
into escrow with the designated title company the amount of
$50,000, which shall be nonrefundable.  Alternatively, if the
Buyer had deposited $50,000 with Auctioneer prior to
executing the Purchase Agreement, the deposit obligation
will be deemed satisfied.

f.  Not later than three (3) business days of the Effective
Date of the Purchase Agreement (as defined in the Purchase
Agreement), Buyer shall submit to the Michigan Liquor
Control Commission ("MLCC"), an application for the
transfer of the Liquor License, together with (at the option of
Buyer) an application for the issuance of a conditional
license in accordance with applicable law.

g. In the event that (a) the MLCC denies Buyer's application
for the transfer of the Liquor Licenses, or (b) the MLCC
Contingency has not been satisfied on or before March 31,
2025, Receiver's obligation to sell and convey the liquor
license and alcohol inventory shall be deemed terminated
and of no further force or effect. However, the balance of the
obligations under the Purchase Agreement shall continue in
full force and effect (and without any reduction in the
Purchase Price).

h. Receiver shall have no financial interest in Buyer or have
any other relationship with Buyer.

i.      The sale and purchase of the Gaylord Property shall
close on or before the expiration of ten (10) days after the
Effective Date of Purchase Agreement (as defined in the
Purchase Agreement.)  If the closing on the sale and
purchase of the Gaylord Property does not timely occur as
set forth in the Purchase Agreement, Receiver may
terminate the Purchase Agreement with the Buyer as set
forth therein without further action or Court order.

j.      In the event the Purchase Agreement is terminated (as
set forth in subsection (i), above), the Receiver may enter
into a subsequent Purchase Agreement with the next
highest bidder at Auction so long as the purchase price is at
or over the Reserve Price.

k.      If the sale and purchase of the Gaylord Property does

17

not timely close, the non-refundable deposit shall be released
to the Receiver, less the Auctioneer's fees (if any.)

Based on the foregoing considerations, the sale of the
Gaylord Property, which is expressly a portion of the Receivership
Property, is in the best interest of the receivership estate and the
parties.  The Plaintiff and Defendant Bach have concurred in the
relief sought by the Receiver's present motion.  However,
Defendant Taylor has filed a response to the Receiver's motion
seeking separate and different relief than the Receiver –namely,
that the Receiver be compelled to engage Jodi Tippins as a realtor
to market and sell the Gaylord Property.  The Court will deny
Defendant Taylor's requested relief.

As an initial matter, the Plaintiff does not agree to the
engagement of Ms. Tippins to market and sell the Gaylord
Property.  This is because for at least a year or more before the
filing of the Complaint in this matter, Defendant Taylor and Ms.
Tippins attempted to sell both parcels of the Gaylord Property.
The only purchase offer which became known to the Plaintiff
related to Parcel 2, or the "Pavilion Parcel."  Originally, Ms.
Tippins informed the bank that there was an offer for Parcel 2 in

18

the amount of $150,000.00 and that Defendant Taylor had

rejected the offer.  However, thereafter Defendant Taylor signed a

purchase agreement to sell the Pavilion Parcel for $150,000.00.

Plaintiff was not made aware of this.

By selling only the Pavilion Parcel without Parcel 1, or the

"Restaurant Parcel," the restaurant would not have water, given

that the water is on the Pavilion Parcel and not on the Restaurant

Parcel.  In an attempt to remedy the problem, and without either

the Plaintiff's or the purchaser's knowledge, Defendant Taylor and

Ms. Tippins, through their then-counsel, created easements to the

entity in an effort to obtain access to the water and the parking on

Parcel 2.  Once these self-created easements were discovered, the

purchaser objected to the easements and refused to close.  The

purchaser, Mr. Donald F. Bleuenstein, filed suit in Otsego County

Circuit Court and filed a Notice of Lis Pendens on the property.

Mr. Bleuenstein has now agreed to withdraw his lawsuit in return

for his earnest money deposit.  The lawsuit has hampered the

Receiver's efforts to sell the property with the self-created

easements and the lis pendens.  Ms. Tippins had over a year

19

before the action was filed to sell the Gaylord Property.  Indeed, Ms. Tippins could have brought a buyer to the table during this receivership.

Moreover, contrary to Defendant Taylor's assertion that the Gaylord Property will be auctioned for $400,000.00, there has been a reserve amount set for the auction that is higher than $400,000.00.  Finally, Ms. Tippins' proposed listing agreement fails to include material terms, such as a proposed sale price and her commission amount.  For all of these reasons, Defendant Taylor's request that Jodi Tippins market and sell the Gaylord Property will be denied.

## IV.   CONCLUSION

Accordingly, this matter having come before the Court for consideration on the Receiver's Motion for Order (1) Authorizing Receiver to Sell Receivership Property Via Auction and Approving and Confirming the Purchase Agreement, (2) Approving and Confirming Sale of Property Free and Clear of Any and All Liens, Mortgages, Claims, Security Interests and Other Encumbrances of Any Kind or Type, and Transferring them to the Net Proceeds of Sale, and (3)

20

Granting Related Relief; all parties to this action and all interested parties and potential secured creditors and claimants having been given notice of the Motion and opportunity to object, the Court having considered any responses and objections to the Motion, and the Court being otherwise fully informed, finds as follows:

IT IS HEREBY FOUND THAT:

1. On July 7, 2022, the Court entered the Stipulation and Order Appointing Receiver (the "OAR") appointing M. Shapiro Management Company, LLC as the Receiver over the "Receivership Property" (as defined in the OAR).

2. The Receivership Property expressly includes certain real property located in the Township of Bagley, County of Otsego, State of Michigan, described as follows:

Parcel 1:

Commencing at the North 1/4 corner of Section 28; thence North 89 degree 31 minutes 29 seconds West 1024.65 feet along the North line of said Section to the Point of Beginning; thence South 02 degree 16 minutes 35 seconds East 199.99 feet; thence North 89 degree 33 minutes 09 seconds West 238.28 feet to the Easterly Right-of-Way of Highway Old US 27; thence North 03 degree 32 minutes 01 seconds East 200.05 feet along said Right-of-Way to the North line of said Section; thence South 89 degree 32 minutes 49 seconds East 218.00 feet along said section line to the Point of Beginning. Part of the Northeast 1/4

of the Northwest 1/4 of Section 28, Township 30 North, Range 3
West.
Commonly known as: 4029 Old US Highway 27, Gaylord, MI
49735
Tax ID # 010-028-200-020-01
(hereinafter "Parcel 1")

Also:

Parcel 2:
Commencing at the North 1/4 corner of Section 28; thence
North 89 degree 31 minutes 29 seconds West 1242.63 feet along
the North line of said Section; thence South 03 degree 32
minutes 01 seconds West 200.07 feet along the Easterly line of
Highway Old 27 to the Point of Beginning; thence South 89
degree 33 minutes 09 seconds East 238.28 feet; thence South 02
degree 16 minutes 35 seconds East 129.95 feet; thence North 89
degree 31 minutes 41 seconds West 251.44 feet to said Easterly
Right-of-Way line; thence North 03 degree 32 minutes 01
seconds East 129.89 feet along said Right-of-Way line to the
Point of Beginning Part of the Northeast 1/4 of the Northwest
1/4 of Section 28. Township 30 North, Range 3 West.
Commonly known as: 4055 Old US Highway 27, Gaylord, MI
49735
Tax ID #010-028-200-020-02
(hereinafter "Parcel 2")

Parcel 1 and Parcel 2 are collectively referred to herein as

the "Gaylord Real Property."

3.  The Receivership Property also includes the "Collateral",

which is all personal property of every kind wherever located of

Defendant 45 Degree Hospitality, Inc., including but not

limited to liquor licenses.

4.  Defendant Buccaroo Too, LLC is the owner of the Gaylord Real Property.

5.  Defendant 45 Degree Hospitality, Inc. is the owner of the (a) Retail – On Premises, Class C, DDA License No. L-000400221 (together with all permits, including additional bar, Sunday sales – am, Sunday sales – pm, catering and outdoor service area), and (b) Retail – Off Premises, SDM License No. L-000400222 (collectively, the "Gaylord Liquor License").  The Gaylord Real Property, Gaylord Liquor License, and other personal property (such as inventory, furniture, etc.) located at the Gaylord Real Property is hereinafter referred to collectively as the "Gaylord Property".

6.  The Court has authority to authorize the sale of real estate and personalty pursuant to 28 U.S.C. §§ 2001(a) and 2004.

7.  The receivership estate would benefit from a sale of the Gaylord Property upon the conditions and in accordance with the procedures set forth in the Motion and the Purchase Agreement (attached as Exhibit 7 to the Motion and incorporated herein.)

8.  Pursuant to ¶ 4 of the OAR the Receiver is authorized to employ agents, including a real estate broker and/or auctioneer.

9.  Subject to Court approval, the Receiver is expressly authorized to "expeditiously and diligently" sell the Receivership Property, including the Gaylord Property, under at least ¶¶ 13 and 13.1 of the OAR.

10.  Such sale is to be free and clear of all mortgage interests, security interest and other liens, as applicable, which shall be transferred to the net proceeds of the sales.  No person or entity shall have any redemption rights with respect to any sale effectuated by the Receiver, and each sale shall be final upon the entry of an Order of the Court confirming same. OAR at ¶13.

11.  The proposed auction of the Gaylord Property, as set forth in the Motion, together with the efforts of the Receiver through its agents (including without limit the Broker and Auctioneer), constitute proper and sufficient marketing of the Gaylord Property for sale.

12.  Plaintiff has approved the sale of the Gaylord Property via

Auction, under the terms set forth in the Motion, and has
further approved the terms of the Purchase Agreement
(attached to the Motion as Exhibit 7).

13.   All conditions to a sale by the Receiver of Receivership
Property will be satisfied under the terms of the Auction and
the Purchase Agreement, as set forth in the Motion.
Specifically:

  a.  The sale shall be for cash, unless otherwise ordered by
  the Court, for amounts subject to the approval of the
  Court.

  b.  The sales approved by the court shall be free and clear of
  all mortgage interests, security interest and other liens,
  as applicable, which shall be transferred to the net
  proceeds of the sales. No person or entity shall have any
  redemption rights with respect to the sale, and each sale
  shall be final upon entry of an order confirming the same.

14.   The Receiver has determined in its reasonable business
judgment that all terms and conditions of the sale set forth in
the Motion and Purchase Agreement are commercially

reasonable and are in good faith, appropriate, fair, and reasonable. The sale will be to a bona fide third-party purchaser.

15.    The proposed sale of the Gaylord Property via Auction, under the terms and conditions set forth in the Motion and in the Purchase Agreement, and entry of this Order is in the best interest of all parties involved.

16.    The marketing and sales procedures employed by the Receiver, by and through his agents, including the Broker and the Auctioneer, to market and sell the Gaylord Property comply with and satisfy the sale and notice requirements set forth in 28 U.S.C. §§ 2001(a) and 2004.

NOW, THEREFORE, pursuant to Fed. R. Civ. Pro. 66, 28 U.S.C. §§ 2001(a) and 2004, and the express terms of the OAR at Paragraphs 2, 13, 13.1, and 14, IT IS ORDERED THAT:

1.    The Motion is GRANTED.

2.    The marketing and sales procedures employed by the Receiver, by and through his agents, including the Broker and the Auctioneer, to market and sell the

Gaylord Property via Auction, as more fully set forth in
the Motion and the Purchase Agreement, comply with
and satisfy the sale and notice requirements set forth
in 28 U.S.C. §§ 2001(a) and 2004, and are APPROVED
and CONFIRMED.

3.     The Receiver is authorized to transfer and sell the
Gaylord Property, as set forth in the Motion and
Purchase Agreement (attached as Exhibit 7 to the
Motion), upon the terms and conditions set forth
therein.

4.     The Receiver is authorized to pay the following in
accordance with the terms of the Purchase Agreement:

a.     All delinquent real property taxes, installments,
assessments, and other charges which are a lien
against the Gaylord Real Property as of the Closing, as
set forth in paragraph 9 of the Purchase Agreement.

b.     Any personal property taxes of Seller, if any, will
be prorated on the same basis as any real property
taxes.

c.     Seller will pay any state and county transfer taxes at Closing.

d.     Seller to pay water / sewer bill to the date of Closing or establish an appropriate escrow to pay the final bill.

e.     All other rents, costs and similar items shall be treated and/or pro-rated in accordance with local custom.

5.  The Receiver is authorized to modify or amend the Purchase Agreement prior to closing but only in accordance with those terms and conditions set forth in the Motion and the Purchase Agreement.

6.  The sale of the Gaylord Property under the terms of the Purchase Agreement shall be free and clear of all mortgage interests, security interests and other liens (the "Liens"), as applicable. Said interests and/or liens shall be transferred to the net proceeds of the sale and attach in the same rank and priority. No person or entity shall have any redemption rights with respect to the sale, and the sale shall be final

upon consummation of the sale.

7.  All Liens on the Gaylord Property which are junior to Plaintiff's lien are terminated, extinguished and discharged immediately upon entry of this Order, without required to form or any compliance with recording or filing requirements.

8. The Net Proceeds of Sale shall be distributed at closing in accordance with ¶ 14 of the OAR, as follows:

a.    First, to the payment of any unpaid fees due Receiver, and the reimbursement of out-of-pocket and other expenses incurred by the Receiver; and,

b.    Second, to Huntington, until the indebtedness secured by its Mortgages, Notes, and Security Agreements have been paid in full; and,

c.    Third, if any proceeds remain, to the Clerk of the Court to be held pending further order of the Court.

9.    Upon receipt of the entire purchase price under the Purchase Agreement, the Receiver is authorized to execute and deliver a deed of conveyance, a bill of sale, and all other documents necessary or desirable to transfer the Gaylord Property,

pursuant to the Purchase Agreement, all on behalf of, and in the name of the Defendants Buccaroo Too, LLC and 45 Degree Hospitality, Inc.

10.    No further order of the Court shall be necessary for the Receiver to distribute the Net Proceeds of Sale of the Gaylord Property.

11.    Nothing in this Order shall enlarge or restrict the claims or defenses of any party to this action.

12.    The sale contemplated by the Motion and Purchase Agreement is confirmed as having been conducted according to law.

13.    This Order may be recorded and filed with the Register of Deeds for Otsego County, Michigan and with any other applicable entity or agency.

14.     Any title company and its agents may rely upon the provisions of this Order and the OAR in issuing any policy of title insurance.

15.    The terms and provisions of this Order shall control to the extent that they are inconsistent with the terms and

provisions of the OAR.

16.    The Receiver is authorized and directed to file an Affidavit of Sale with the Clerk of the Court within fifteen (15) days of closing and transfer of the Gaylord Property stating the following with respect to the sale:

i.    The date on which the sale closed.

ii.    That the sale complied with the conditions of this Order.

iii.    The sales price.

17.     This Order constitutes an "Approval Order" confirming and approving the procedure and the sale of the Gaylord Property as set forth in the Motion and Purchase Agreement.  As a result, and pursuant to both Fed. R. Civ. Pro. 54(b) and the OAR, the Court expressly determines that there is no just reason for delay and, therefore, this Order is entered as a FINAL ORDER.

SO ORDERED.

Dated:  May 24, 2024                              /s/Gershwin A. Drain
                                                 GERSHWIN A. DRAIN
                                                 United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 24, 2024, by electronic and/or ordinary mail.

/s/ Amanda Chubb
Case Manager